UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEW YORK STATE TEACHERS'
RETIREMENT SYSTEM, Individually
and on Behalf of All Other Persons
Similarly Situated,

              Plaintiff,

v.                                                                        Civil Case No. 14-11191
                                                                          Honorable Linda V. Parker

GENERAL MOTORS COMPANY,
DANIEL F. AKERSON, NICHOLAS
S. CYPRUS, CHRISTOPHER P.
LIDDELL, DANIEL AMMANN,
CHARLES K. STEVENS, III,
MARY T. BARRA, THOMAS S.
TIMKO, and GAY KENT,

              Defendants.
_____/

## OPINION AND ORDER GRANTING LEAD PLAINTIFF'S MOTION FOR PARTIAL MODIFICATION OF THE PSLRA DISCOVERY STAY

This matter currently is before the Court on a motion filed by Lead Plaintiff New York State Teachers' Retirement System ("NYSTRS") to partially lift the stay of discovery imposed pursuant to the Private Securities Litigation Reform Act of 1934 ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B).  The motion, filed on February 4, 2015, has been fully briefed.  (*See* ECF Nos. 64-66.)  The Court finds the legal arguments adequately presented in the parties' papers such that the decision-making process would not be significantly aided by oral argument.  Therefore, the

Court is dispensing with oral argument with respect to the motion pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).  For the reasons that follow, the Court grants NYSTRS' motion to partially lift the stay.

## I.     Relevant Background

In this lawsuit, initiated on March 21, 2014, a putative class of investors who purchased securities in General Motors Company ("GM") between November 17, 2010 and July 24, 2014 (inclusive of both dates), claim that Defendants' fraud in connection with faulty ignition switches in GM vehicles caused loss to the value of their investments.  Several movants sought to be appointed Lead Plaintiff and, on October 14, 2014, this Court appointed NYSTRS.  (ECF No. 44.)  On January 15, 2015, NYSTRS filed an Amended Complaint.  (ECF No. 62.)  Defendants have filed motions to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF Nos. 70, 73.)

In the meantime, NYSTRS filed the pending motion to partially lift the PSLRA's stay of discovery, which remains in effect while Defendants' motions to dismiss are pending.  NYSTRS asks the Court to enter an order partially modifying the stay by: (1) permitting discovery of documents that GM has already gathered, reviewed, and produced, or will produce, to private litigants in multidistrict litigation currently pending before The Honorable Jesse M. Furman of the U.S. District Court for the Southern District of New York (the "MDL Litigation"); and

2

(2) permitting NYSTRS to serve document preservation subpoenas on certain third parties.

The faulty ignition switches and Defendants' conduct in relation to the defects have been investigated by the National Highway Traffic Safety Administration ("NHTSA"), the U.S. House Committee on Energy and Commerce, the Securities and Exchange Commission, and at least forty-five states. The Department of Justice also launched a criminal investigation and GM hired Anton R. Valukas, a lawyer at the firm of Jenner & Bloch, to conduct an internal investigation. During these various investigations, GM produced millions of pages of documents. On May 16, 2014, GM signed a Consent Order with NHTSA in which GM admitted that it violated the National Traffic and Motor Vehicle Safety Act of 1966 and agreed to pay the maximum $35 million fine in connection with its failure to timely report the ignition switch defects.

The MDL Litigation is comprised of numerous consolidated cases in which private litigants are suing GM and other defendants, seeking damages for economic loss, personal injury, and/or wrongful death allegedly arising from the faulty ignition switches in GM vehicles. Judge Furman, who is presiding over the MDL Litigation, has entered orders requiring GM to produce to the plaintiffs the documents it provided to Congress, NHTSA, and other government agencies, as well as pursuant to Valukas' investigation. Judge Furman also ordered GM to

provide the names of all witnesses interviewed during Valukas' investigation who were not named in the report ultimately prepared by him. The parties also are engaged in discovery in the MDL Litigation which has resulted in GM producing additional documents.

## II.   NYSTRS' Motion and Defendants' Response

In its pending motion, NYSTRS asks the Court to partially lift the PSLRA stay to obtain the documents already produced in the MDL Litigation, as well as any documents provided in future productions. NYSTRS also seeks to serve preservation subpoenas on the following third parties: (1) GM's longtime auditor Deloitte & Touche; (2) the supplier of the defective ignition switch, Delphi Corporation; (3) the lead underwriters of GM's initial public offering, J.P. Morgan Securities LLC and Morgan Stanley & Co., Inc.; (4) rental car companies that had the defective GM vehicles in their fleets and which NYSTRS maintains warned GM that the vehicles were likely defective; and (5) certain Wall Street analysts that covered GM during the Class Period.[1] The preservation subpoenas do not ask any third party to produce any documents and, in fact, emphasize: "No production of documents is required or being sought at this time." (*See* ECF No. 64-14, capitalization and emphasis removed.) Instead, the "subpoenas" simply instruct

---

[1] NYSTRS identifies those analysts as: Deutsche Bank, Buckingham, UBS Research, RBC Capital, Barclays, Credit Suisse, Sterne, Agee & Leach, Inc., and Jeffries & Co., Inc. (ECF No. 66 at Pg ID 2602 n.7.)

the third parties to retain documents in their custody, possession or control relating to certain proscribed categories (which vary according to the category in which the third party falls).  (*See id*.)

NYSTRS argues that discovery of the documents produced, or which will be produced, in the MDL Litigation is necessary to prevent undue prejudice to the putative class members in this litigation.  Specifically, NYSTRS contends that it will suffer prejudice resulting from not having the information which parties in other proceedings have so that it can develop its litigation strategy and weigh its options moving forward.  In light of other pending litigation and investigations, NYSTRS also argues that without this discovery, it is deprived of information essential to protect its interests in this "rapidly shifting landscape."  Because GM already collected and produced the documents in the MDL Litigation (and probably, as well, in response to the various investigations), NYSTRS maintains that Defendants will suffer no undue burden in having to produce them here.[2]

NYSTRS argues that service of the preservation subpoenas is necessary to maintain the status quo-- i.e., to guarantee that relevant documents in the hands of third parties are not destroyed while the stay is in effect.  NYSTRS points out that these third parties are not obligated to retain these documents and, because some of

---

[2]The Court presumes that NYSTRS is agreeing to pay production costs.

the conduct at issue occurred more than eleven years ago, may very well be ready to dispose of the documents in accordance with their document retention policies.

NYSTRS maintains that its discovery requests are particularized. As to the document production, NYSTRS notes that its requests are limited specifically to what is or will be produced in the MDL Litigation. As to the preservation subpoenas, NYSTRS indicates that it has specifically identified what types of documentation the third parties should retain.

Defendants respond that NYSTRS has not met its burden of showing that the requested discovery is necessary to preserve evidence or to prevent undue prejudice. Defendants also argue that NYSTRS' requests are not particularized. According to Defendants, because NYSTRS seeks *all* documents that will be produced in the MDL Litigation, there is no way for GM or the Court to know what documents NYSTRS' request will ultimately require GM to produce and thus whether those documents will be relevant to this securities lawsuit. In addition to claiming that they do not know what a "preservation subpoena" is, Defendants argue that NYSTRS' request is not sufficiently particularized because it has not specifically identified the third parties on which it seeks to serve the subpoenas and because the requests contain multiple pages of definitions and instructions, and broad descriptions of documents to be retained.

6

III.   **Applicable Law and Analysis**

The PSLRA imposes an automatic stay of discovery while a motion to dismiss is pending:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, *unless* the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u-4(b)(3)(B) (emphasis added).  Thus a party asking a court to lift the PSLRA's stay must show that (1) the discovery sought is particularized and (2) necessary to (a) preserve evidence or (b) prevent undue prejudice to the party.  *Id.* The PSLRA's legislative history reflects that Congress enacted the discovery stay to prevent plaintiffs from filing frivolous securities class actions with the hope of finding a sustainable claim during discovery or with the intent of using the extensive discovery process to force a coercive settlement.  *See* Senate Report No. 104-98, 104th Congress (1995), reprinted in 1995 U.S.C.C.A.N. 679, 693; H.R. Conf. Rep. No. 104-369 (1995), 104th Congress, Reprinted in 1995 U.S.C.C.A.N. 730.

The discovery NYSTRS seeks is particularized.  It is limited to materials that have been produced already and which will be produced in the MDL Litigation.  *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246 (D. Md. 2004) (finding the plaintiffs' request sufficiently particularized where they

7

sought documents previously produced in connection with internal and external investigations, and were thus "identifiable"). As the district court reasoned in *Royal Ahold*, the meaning of "particularized" in any given case "must take into account the nature of the underlying litigation." *Id.* Thus, there, the court found that the volume of the discovery sought-- estimated to be one million pages--  was not unreasonable where "the complaint alone extends for 430 pages and alleges multibillion dollar accounting errors by a firm with operations on at least four continents." *Id.* Here, NYSTRS' Amended Complaint extends 542 pages and alleges concealment of the alleged defects for more than a nine year period and securities fraud over a period of several years, resulting in a loss of billions of dollars of market value for GM investors. The documents sought by NYSTRS also are sufficiently relevant to be discoverable. Under the Federal Rules of Civil Procedure, the test for relevance is liberal and a party is entitled to discovery provided it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). The preservation subpoenas do not require the production of any discovery at this time and ask third parties to retain specific categories of documents.

NYSTRS also shows that the discovery sought from the MDL Litigation is necessary to prevent undue prejudice. District courts have construed "undue prejudice", as used in the PSLRA, to mean " 'improper or unfair treatment

8

amounting to something less than irreparable harm.' " *See, e.g., In re Labranche Sec. Litig.*, 333 F. Supp. 2d 178, 182 (S.D.N.Y. 2004) (quoting *In re Vivendi Universal S.A., Sec. Litig.*, No. 02 Civ 5571, 2003 WL 21035383, at *1 (S.D.N.Y. May 5, 2003)) (additional quotation marks and citations omitted); *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, MDL No. 1725, No. 05-md-1725, 2007 WL 518626, at *6 (E.D. Mich. Feb. 15, 2007); *Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*, 917 F. Supp. 717, 720 (S.D. Cal. 1996). Undue prejudice has been found where the plaintiff lacks access to documents already produced to governmental and other agencies and in other lawsuits. *See, e.g., Pension Trust Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913, 916 (E.D. Wis. 2013); *In re Worldcom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002); *In re Delphi Corp.*, 2007 WL 518626, at **6-7; *Seippel v. Sidley, Austin, Brown & Wood LLP*, No. 03 CIV 6942, 2005 WL 388561 (S.D.N.Y. Feb. 17, 2005); *Singer v. Nicor, Inc.*, No. 02 C 5168, 2003 WL 22013905 (N.D. Ill. Apr. 23, 2003); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. MDL-1446, H-01-3624, 2002 WL 31845114, at *2 (S.D. Tex. Aug. 16, 2002).

In *Worldcom* the district court reasoned that the lead plaintiffs would suffer undue prejudice without access to the documents already provided to others

> by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape. It would essentially be the only major interested party in the criminal and civil proceedings against

WorldCom without access to documents that currently form the core
of those proceedings.

*Worldcom*, 234 F. Supp. 2d at 305.  The court further reasoned that production of

the documents would not unduly burden the defendants, because they already had

reviewed and compiled the documents when they produced them to other entities

or parties.  *Id*. at 306.

Defendants point out that several of the cases cited by NYSTRS involved

bankrupt defendants or defendants that had been sold, thus posing a risk that the

securities plaintiff would "be left to pursue its action against defendants who no

longer have anything or at least as much to offer" if the stay was not lifted.  *In re

Delphi*, 2007 WL 518626, at *7; *see also Worldcom*, 234 F. Supp. 2d at 302, 305-

06; *In re Massey Energy Co. Sec. Litig.*, No. 5:10-0689, 2011 WL 4528509, at *6

(S.D. W. Va. Set. 28, 2011); *Enron*, 2002 WL 31845114, at *1.  However, not all

of the cases cited by NYSTRS involved bankrupt or sold entities.  *See, e.g., Singer*,

2003 WL 22013905, at *2 (concluding "that even if Nicor is not bankrupt, the

concerns expressed by the *Enron* and *Worldcom* courts are valid and present"); *In

re Bank of America Corp., Sec., Derivative, and ERISA Litig.*, No. 09 MDL 2058,

2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009); *In re Firstenergy Corp. Sec.

Litig.*, 229 F.R.D. 541, 545 (S.D. Ohio 2004).

Courts also have considered the defendants' settlements with regulators

and/or other plaintiffs in deciding whether the securities plaintiffs would suffer

undue prejudice if the PSLRA stay was not lifted.  *See, e.g., In re Delphi*, 2007 WL 518626, at *7 ("Given that several of the Defendants . . . have already consented to substantial money judgments in the SEC case, Lead Plaintiffs . . . already face the prospect that they may not be able to recover from those Defendants . . . because of the substantial consent judgments they have taken . . ."); *In re Labranche Sec. Litig.*, 333 F. Supp. 2d at 183 (emphasizing Labranche's agreement to pay more than $63.5 million to settle the SEC's and NYSE's claims when deciding to partially lift the PSLRA stay).  It was the absence of such settlements that led the courts in cases cited by Defendants to deny the plaintiffs' motions to lift the PSLRA stay.  *See Kuriakose v. Fed. Home Loan Mortg. Co.*, 674 F. Supp. 2d 483, 489 (S.D.N.Y. 2009) (distinguishing *Labranche* and *Worldcom* because "there are no criminal or civil governmental or administrative actions pending against any Defendant; there are no settlement discussions with anyone pending or planned . . ..") (quotation marks and citation omitted); *see also Mori v. Saito*, 802 F. Supp. 2d 520 (S.D.N.Y. 2011) (distinguishing *In re Royal Ahold* because the defendants were not targets of numerous ongoing civil and criminal government actions and there was no likely settlement with non-PSLRA plaintiffs).  GM, in comparison, has entered into a $35 million regulatory settlement with NHTSA.

For these reasons, the Court concludes that the PSLRA stay should be lifted to allow NYSTRS to obtain the first category of documents sought.  For the reasons that follow, the Court concludes that the stay also should be lifted to allow NYSTRS to serve the proposed preservation subpoenas.

The PSLRA mandates that, during the pendency of the stay, all parties to the action must preserve "all documents, data compilations (including electronically recorded or stored data), and tangible objects" in their custody or control "that are relevant to the allegations . . ." in the complaint.  15 U.S.C. § 78u-4(b)(3)(C)(i).  Documentary evidence in the care, custody, or control of third parties, however, is not expressly subject to any preservation order.  NYSTRS is concerned that the ordinary document retention policies of the third parties from which it will want to obtain discovery in this litigation might result in the destruction of relevant files in the ordinary course of business, particularly because some of the conduct at issue occurred more than eleven years ago.  It seeks to serve the retention subpoenas to place the third parties on notice that this lawsuit is pending, and to impose an affirmative duty on those parties to preserve the evidence NYSTRS will seek if the action survives Defendants' motions to dismiss.

Courts have granted motions to lift the PSLRA's discovery stay for this purpose.  *See In re Grand Casinos, Inc. Sec. Litig.*, 988 F. Supp. 1270 (D. Minn. 1997) (partially lifting stay to allow service of subpoenas on third parties for

12

limited purpose of notifying them of the litigation and imposing a duty to preserve evidence); *In re Smith Barney Transfer Agent Litig.*, No. 05 CIV 7583, 2012 WL 1438241, at *3 (S.D.N.Y. Apr. 25, 2012) (partially lifting stay to allow service of preservation subpoena on third party, reasoning that its "status as a non-party significantly increases the risk that evidence may be lost"); *Koncelik v. Savient Pharm., Inc.*, No. 08-10262, 2009 WL 2448029, at *1 (S.D.N.Y. Aug. 10, 2009) (partially lifting the stay to compel defendants' identification of certain third party corporations and to allow the plaintiff to serve preservation subpoenas on those corporations); *In re Tyco Int'l Ltd. Multidistrict Litig.*, MDL No. 02-1335, 2000 WL 33654141, at **3-4 (D.N.H. July 27, 2000) (partially lifting stay to allow service of preservation subpoenas on third parties identified by the plaintiff "as accountants, auditors, and/or consultants that may possess relevant evidence of the acquisitions and accounting practices at issue").  The district court in *In re Grand Casinos* reasoned that service of preservation subpoenas

> would further Congress' intent by subjecting relevant evidence to a "stay put" directive whether in the hands of the parties, or in those of third-parties, but would not allow the [p]laintiff to engage in discovery until such time as the [d]istrict [c]ourt should rule on the [m]otion to [d]ismiss in a way that would warrant an enforcement of the [s]ubpoenas.

988 F. Supp. at 1272.  This Court agrees that allowing NYSTRS to serve the proposed preservation subpoenas on the identified third parties will maintain the status quo until the Court rules on Defendants' pending motions to dismiss.

13

Accordingly,

**IT IS ORDERED**, that Lead Plaintiff's Motion for partial Modification of

the PSLRA Discovery Stay is **GRANTED**.

<div style="margin-left: 40%">

s/ Linda V. Parker _____
LINDA V. PARKER
U.S. DISTRICT JUDGE

</div>

Dated: April 8, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of
record and/or pro se parties on this date, April 8, 2015, by electronic and/or U.S.
First Class mail.

<div style="margin-left: 40%">

s/ Richard Loury _____
Case Manager

</div>

14