# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| NEW YORK STATE TEACHERS' RETIREMENT SYSTEM, Individually and on Behalf of All Other Persons Similarly Situated, | Civil Case No. 4:14-cv-11191 |
|  | Honorable Linda V. Parker |
| Plaintiff, |  |
| v. |  |
| GENERAL MOTORS COMPANY, DANIEL F. AKERSON, NICHOLAS S. CYPRUS, CHRISTOPHER P. LIDDELL, DANIEL AMMANN, CHARLES K. STEVENS, III, MARY T. BARRA, THOMAS S. TIMKO, and GAY KENT |  |
| Defendants. |  |

## LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

Pursuant to Federal Rule of Civil Procedure 23(h) and upon (a) the Declaration of Salvatore J. Graziano in Support of: (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, filed herewith; (b) the Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, attached hereto; and (c) all other papers and proceedings herein, Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP, hereby moves this Court before the Honorable Linda V. Parker, on April 20, 2016 at 11:00 a.m. in Courtroom 108 of the Federal Building and U.S. Courthouse, 600 Church Street, Flint, Michigan, or at such other location and time as set by the Court, for entry of an order awarding attorneys' fees and reimbursement of litigation expenses.

Dated:  March 9, 2016                    Respectfully submitted,

                                         /s/ Salvatore J. Graziano
                                         Salvatore J. Graziano
                                         James A. Harrod
                                         **BERNSTEIN LITOWITZ**
                                         **  BERGER & GROSSMANN LLP**
                                         1251 Avenue of the Americas, 44th Fl.
                                         New York, NY 10019
                                         Telephone: (212) 554-1400
                                         Facsimile: (212) 554-1444
                                         Salvatore@blbglaw.com
                                         Jim.Harrod@blbglaw.com

                                         *Lead Counsel for Lead Plaintiff and*
                                         *for the Settlement Class*

**THE MILLER LAW FIRM, P.C.**
E. Powell Miller (P39487)
Marc L. Newman (P51393)
Sharon S. Almonrode (P33938)
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
mln@millerlawpc.com
ssa@millerlawpc.com

*Local Counsel for Lead Plaintiff and for the Settlement Class*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| NEW YORK STATE TEACHERS' RETIREMENT SYSTEM, Individually and on Behalf of All Other Persons Similarly Situated, | Civil Case No. 4:14-cv-11191 |
| | Honorable Linda V. Parker |
| Plaintiff, | |
| v. | |
| GENERAL MOTORS COMPANY, DANIEL F. AKERSON, NICHOLAS S. CYPRUS, CHRISTOPHER P. LIDDELL, DANIEL AMMANN, CHARLES K. STEVENS, III, MARY T. BARRA, THOMAS S. TIMKO, and GAY KENT | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF ISSUES PRESENTED.............................................. vii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ viii

I.     INTRODUCTION .................................................................1

II.    ARGUMENT.........................................................................5

    A.    Plaintiffs' Counsel Are Entitled To An Award Of Attorneys' Fees From The Common Fund ..............................................5

    B.    The Court Should Award A Reasonable Percentage Of The Common Fund.........................................................................6

    C.    The Requested Attorneys' Fees Are Reasonable Under The Percentage-Of-The Fund Method.........................................8

    D.    A Review Of The Sixth Circuit Factors Confirms That The Requested 7% Fee Is Fair And Reasonable .......................12

        1.    The Value Of The Benefit Rendered To The Settlement Class Supports The Requested Fee.........................12

        2.    The Value Of The Services On An Hourly Basis, And A Lodestar Cross-Check, Supports The Requested Fee ......................................................15

        3.    Society's Stake In Rewarding Attorneys Who Enforce The Securities Laws Supports The Requested Fee ......................................................17

        4.    The Contingent Nature Of The Representation Supports The Requested Fee.....................................19

        5.    The Complexity Of The Litigation Supports The Requested Fee ......................................................19

      6.    The Professional Skill And Standing Of Counsel Supports The Requested Fee.........................................................20

   E.    Plaintiffs' Counsel's Expenses Are Reasonable And Were Necessarily Incurred To Achieve The Benefit Obtained...................22

   F.    Lead Plaintiff New York Teachers Should Be Awarded Its Reasonable Costs Under The PSLRA.................................................24

III.   CONCLUSION...........................................................................................25

# TABLE OF AUTHORITIES

CASES                                                                 PAGE(S)

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ...............................................................14

*In re Am. Express Fin. Advisors Sec. Litig.*,
    No. 04-cv-1773, slip op. (S.D.N.Y. July 18, 2007 .............................10

*Bailey v. AK Steel Corp.*,
    No. 06-cv-468, 2008 WL 553764 (S.D. Ohio Feb. 28, 2008)............................17

*In re BankAmerica Corp. Sec. Litig.*,
    228 F. Supp. 2d 1061 (E.D. Mo. 2002) ............................................10

*Barnes v. City of Cincinnati*,
    401 F.3d 729 (6th Cir. 2005) ...........................................................15

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988).......................................................................17

*Bessey v. Packerland Plainwell, Inc.*,
    2007 WL 3173972 (W.D. Mich. Oct. 26, 2007) ..................................8

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).........................................................................5

*Bowling v. Pfizer, Inc.*,
    922 F. Supp. 1261 (S.D. Ohio 1996) ................................................17

*In re Cardinal Health Inc. Sec. Litig.*,
    528 F. Supp. 2d 752 (S.D. Ohio 2007)................................7, 9, 15, 17

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003).........................................5, 6, 7, 8

*Chamberlain v. Reddy Ice Holdings, Inc.*,
    757 F. Supp. 2d 683 (E.D. Mich. 2010) ...........................................14

*In re CMS Energy Sec. Litig.*,
No. 02-cv-72004, 2007 U.S. Dist. LEXIS 96786 (E.D. Mich. Sept.
6, 2007) ...................................................................................................9, 17

*In re Comverse Tech., Inc., Sec. Litig.*,
No. 06-cv-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010) .......................10

*In re DaimlerChrysler AG Sec. Litig.*,
No. 00-cv-0993, slip op. (D. Del. Feb. 5, 2004 .................................................10

*In re Datatec Sys., Inc. Sec. Litig.*,
No. 04-cv-525, 2007 WL 4225828 (D.N.J. Nov. 28, 2007).............................20

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ............................................................*passim*

*In re Dollar General Corp. Sec. Litig.*,
No. 01-cv-0388, slip op. (M.D. Tenn. May 24, 2002) ...................................9, 10

*In re DPL Inc. Sec. Litig.*,
307 F. Supp. 2d 947 (S.D. Ohio 2004) .........................................................9, 12

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)............................................................................................14

*Eltman v. Grandma Lee's, Inc.*,
No. 82-cv-1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986) ...........................18

*In re F & M Distribs., Inc.*,
1999 U.S. Dist. LEXIS 11090 (E.D. Mich. June 29, 1999) ..............................22

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .........................17

*Fogarazzo v. Lehman Bros., Inc.*,
No. 03-cv-5194, 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011)...........................19

*Fournier v. PFS Invs., Inc.*,
997 F.Supp. 828 (E.D. Mich.1998) .....................................................................9

*In re General Motors Corp. Sec. & Derivative Litig.*,
No. 06-md-1749, slip op. (E.D. Mich. Jan. 6, 2009)...............................9, 10, 17

iv

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ...........................................................................15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...........................................................................9

*In re High-Crush Partners L.P. Sec. Litig.*,
   No. 12-cv-8557, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)..........................8

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ...........................................................................20

*Manners v. Am. Gen. Life Ins. Co.*,
   1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999).............................................17

*McHugh v. Olympia Entm't, Inc.*,
   37 Fed. Appx. 730 (6th Cir. 2002)....................................................................16

*New England Health Care Employees Pension Fund v. Fruit of the
   Loom, Inc.*, 234 F.R.D. 627 (W.D. Ky. 2006), *aff'd sub nom. Fidel
   v. Farley*, 534 F.3d 508 (6th Cir. 2008)...................................................5, 19, 22

*New Jersey Carpenters Health Fund v. Residential Capital LLC*,
   No. 08-cv-8781, slip op. (S.D.N.Y. July 31, 2015)..........................................10

*Nieman v. Duke Energy Corp.*,
   No. 12-cv-00456, slip op. (W.D.N.C. Nov. 2, 2015) ........................................10

*In re Old CCA Sec. Litig./In re Prison Realty Sec. Litig.*,
   No. 99-cv-458, 2001 U.S. Dist. LEXIS 21942 (M.D. Tenn. Feb. 9,
   2001) ...................................................................................................................9

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13,
   2011) ...................................................................................................6, 7, 8, 15

*In re Polyurethane Foam Antitrust Litig.*,
   No. 10-MD-2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) .....................9

*Ramey v. Cincinnati Enquirer, Inc.*,
   508 F.2d 1188, (6th Cir. 1974) ...................................................................12, 18

*Rawlings v. Prudential-Bache Props., Inc.*,
 9 F.3d 513 (6th Cir. 1993) ...................................................................5, 6, 7

*In re Rite Aid Corp. Sec. Litig.*,
 396 F.3d 294 (3d Cir. 2005) ...................................................................16, 20

*Robbins v. Koger Props., Inc.*,
 116 F.3d 1441 (11th Cir. 1997) .......................................................................15

*In re Satyam Computer Svc. Sec. Litig.*,
 No. 09-MD-2027, slip op. (S.D.N.Y. Sept. 13, 2011)........................................10

*In re Se. Milk Antitrust Litig.*,
 No. 07-cv-208, 2013 WL 2155387 (E.D. Tenn. May 17, 2013)...............*passim*

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
 No. 10-CV-14360, 2015 WL 1498888 (E.D. Mich. Mar. 31, 2015)...................6

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
 91 F. Supp. 2d 942 (E.D. Tex. 2000)................................................................11

*In re Skechers Toning Shoe Prods. Liab. Litig.*,
 No. 11-MD-2308, 2012 WL 3312668 (W.D. Ky. Aug. 13, 2012)..................4, 9

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
 2014 WL 2946459 (E.D. Tenn. Jun. 30, 2014) ....................................6, 7, 9, 10

*Stanley v. U.S. Steel Co.*,
 No. 04-cv-74654, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009)....................19

*Swigart v. Fifth Third Bank*,
 No. 11-cv-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) ......................7, 12

*In re Telectronics Pacing Sys., Inc.*,
 137 F. Supp. 2d 1029 (S.D. Ohio 2001) ...........................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007)..........................................................................................18

*Union Asset Management Holding A.G. v. Dell, Inc.*,
 669 F.3d 632 (5th Cir. 2012) ..............................................................................8

*In re UnumProvident Corp. Derivative Litigation*,
   No. 02-cv-386, 2010 WL 289179 (E.D. Tenn. Jan. 20, 2010) ...........................16

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir.2005) ...............................................................................7, 11

*In re Williams Sec. Litig.*,
   No. 02-cv-72-SPF, ECF No. 1638 (N.D. Okla. Feb. 12, 2007) ........................10

*Wyatt v. El Paso Corp.*,
   No. 02-2717, slip op. (S.D. Tex. Mar. 9, 2007)................................................10

**STATUTES**

15 U.S.C. § 78u-1(a)(6) ...........................................................................................7

15 U.S.C. § 78u-4(a)(4) ..........................................................................................24

**OTHER AUTHORITIES**

Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?*
   158 U. PA. L. REV. 2043 (2010)............................................................................8

Federal Rules of Civil Procedure Rule 23(h)...........................................................1

Court-appointed Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), respectfully submits this memorandum of law in support of its motion, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, for an award of attorneys' fees on behalf of all Plaintiffs' Counsel in the amount of 7% of the Settlement Fund, or $21 million, plus interest.[1]   Lead Counsel also seeks reimbursement of $775,746.12 in litigation expenses that Plaintiffs' Counsel reasonably and necessarily incurred in prosecuting and resolving the Action, and reimbursement of $2,903.71 in costs and expenses incurred by Lead Plaintiff New York State Teachers' Retirement System ("New York Teachers") directly related to its representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## I.   **INTRODUCTION**

The proposed Settlement, which provides for a payment of $300 million in cash in exchange for the resolution of the Action, is an excellent result for the Settlement Class.  In undertaking this litigation, counsel faced numerous challenges to establishing liability, loss causation and damages.  The risk of losing was very real, and it was greatly enhanced by the fact that Lead Counsel would be litigating against a well-financed corporate defendant, represented by highly skilled defense counsel.  There was, therefore, an exceptionally strong possibility that the case would yield little or no recovery after many years of costly litigation.  Despite these

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated as of November 11, 2015 (ECF No. 94-2).

risks, Lead Counsel undertook this Action on a fully contingent basis. The only guarantees were that the case would be complex and hard-fought, and that Lead Counsel would receive nothing if they lost.

As detailed in the accompanying Graziano Declaration[2], Lead Counsel vigorously pursued this litigation from its outset by, among other things, (a) conducting a wide-ranging review and analysis of General Motors Company ("GM" or the "Company") and the allegedly fraudulent misrepresentations and omissions concerning GM's product warranty and recall liabilities, internal controls and commitment to safety; (b) engaging in rigorous factual and legal research, including the review of publicly available information published by and concerning GM (including the Valukas Report), NHTSA practices, prior automotive recalls and related litigation, GM's corporate history, applicable pleading and other standards in the Sixth Circuit, and interviews and meetings with numerous former employees of GM and other knowledgeable persons; (c) drafting the 543-page Consolidated Class Action Complaint (the "Complaint"), filed on January 15, 2015 (ECF No. 62);

---

[2] The Declaration of Salvatore J. Graziano in Support of (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Graziano Decl.") is an integral part of this submission. Citations to "¶" in this memorandum refer to paragraphs in the Graziano Decl. For the sake of brevity in this memorandum, the Court is respectfully referred to the Graziano Declaration for a detailed description of, *inter alia*: the history of the Action (¶¶ 12-65); the efforts involved in the drafting of the Complaint (¶¶ 23-32); the nature of the claims asserted (¶¶ 9-11, 24); the negotiations leading to the Settlement (¶¶ 58-64); the risks and uncertainties of continued litigation (¶¶ 66-88); and a description of the services Lead Counsel provided for the benefit of the Settlement Class (¶¶ 4, 12-65).

(d) researching, drafting and successfully moving for partial modification of the stay of discovery under the PSLRA, which permitted discovery of documents that GM had already produced, or would produce, to private litigants in the related multidistrict litigation pending in the Southern District of New York, and allowed Lead Plaintiff to serve 16 document preservation subpoenas on relevant third parties; (e) researching, drafting and filing an opposition to Defendants' motions to dismiss (ECF No. 86); (f) researching, drafting, and successfully opposing the Menora Group's motion to stay the Court's Order appointing New York Teachers as Lead Plaintiff pending the resolution of its petition for writ of mandamus before the Sixth Circuit; (g) consulting with various automotive, accounting and economic experts and consultants; (h) engaging in intensive discovery that included the review, analysis and coding of over four million pages of documents in a period of only four months; and (i) negotiating with Defendants on an arm's-length basis to resolve the Action.

Lead Plaintiff's efforts at the outset of the litigation, particularly in connection with the preparation of the Complaint, substantially advanced the substantive scope and basis of the Settlement Class's claims. Those efforts included expanding the scope and subject matters of the false statements (to include the accounting allegations related to GM's recall and warranty reserves, and internal controls), expanding the Class Period, and refining the loss causation allegations.  ¶¶ 25-32. Given the Valukas Report, Lead Plaintiff also engaged in a review of voluminous material to place the GM ignition switch scandal in proper context, both as to GM's own culture and past experience with "moving shutdowns," but also on an industry-

3

wide basis, to establish that the defect in question was undoubtedly a safety issue. Finally, Lead Plaintiff scoured records of complaints to GM, its dealers, and to NHTSA by affected drivers or vehicles owners to further support its allegations.

Given the substantial recovery for the Settlement Class, the complexity and amount of work involved, the skill and expertise required, and the significant risks that counsel undertook, the requested fee of 7% of the Settlement Amount is fair and reasonable. As discussed below, federal courts in this District and throughout the nation have awarded far greater percentage fees in other similarly complex class action litigation. In fact, courts in the Sixth Circuit have recognized that "[t]he 'benchmark' percentage for this standard has been 25%." *In re Skechers Toning Shoe Prods. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2012 WL 3312668, at *10 (W.D. Ky. Aug. 13, 2012). However, Lead Counsel is bound by the fee agreement it reached with the Lead Plaintiff at the outset of this litigation.

Indeed, the propriety of the fee request is further supported by the fact that it was negotiated at outset of the litigation by New York Teachers, the kind of sophisticated institutional investor Congress sought to empower to monitor class counsel through the enactment of the PSLRA, and is still supported by New York Teachers. *See* Declaration of Joseph Indelicato, Jr. ("Indelicato Decl."), attached as Exhibit 2 to the Graziano Decl, at ¶ 13. It is also confirmed by a use of a lodestar cross-check, which demonstrates that the requested fee equates to a multiplier of only 1.9, a number that is well within the range courts have found reasonable.

Finally, while the March 23, 2016 deadline for Settlement Class Members to object to the requested attorneys' fees and Litigation Expenses has not yet passed,

to date, there has been only one generalized objection. *See* ¶¶ 94, 120.[3] "The Class's reaction to the requested fee award is . . . important evidence of the fairness and reasonableness of the fee request." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008); *see also New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

As set forth herein and in the Graziano Decl., the requested attorneys' fees are fair and reasonable under the applicable standards and should be awarded by the Court.  The costs and expenses requested by Lead Plaintiff and its counsel are likewise reasonable in amount, and they were necessarily incurred in the successful prosecution of the Action.  Accordingly, they too should be approved.

## II.   ARGUMENT

### A.   Plaintiffs' Counsel Are Entitled To An Award Of Attorneys' Fees From The Common Fund

"[I]t is well established that 'a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531-32 (E.D. Mich. 2003) (Edmunds, J.) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).  In common fund cases, the Sixth Circuit has held that "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache*

---

[3] Lead Counsel will address that objection (along with any others that may be made) in its reply brief, which will be filed with the Court by April 13, 2016.

*Props., Inc.,* 9 F.3d 513, 516 (6th Cir. 1993). The standard for an award of attorneys'

fee in common fund cases in the Sixth Circuit is that they be "reasonable under the

circumstances." *Id.; see Cardizem,* 218 F.R.D. at 531.

### B. The Court Should Award A Reasonable Percentage Of The Common Fund

Although the Sixth Circuit has granted trial courts the discretion to utilize

either the lodestar or the percentage-of-the-fund method when awarding attorney

fees (*Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)),

courts within the Sixth Circuit have recognized the clear trend "'toward adoption of

a percentage of the fund method' in common fund cases." *In re Se. Milk Antitrust

Litig.*, No. 2:07-CV 208, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013).

Courts in this Circuit prefer the percentage method of awarding attorneys' fees

because it eliminates disputes about the reasonableness of rates and hours, conserves

judicial resources, and aligns the interests of class counsel and the class members.

*See Rawlings*, 9 F.3d at 515; *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,

No. 10-CV-14360, 2015 WL 1498888, at *15 (E.D. Mich. Mar. 31, 2015); *In re

Packaged Ice Antitrust Litig.*, 08-MDL-01952, 2011 WL 6209188, at *16 (E.D.

Mich. Dec. 13, 2011); *Delphi*, 248 F.R.D. at 502. It also "more accurately reflects

the result achieved" and "has the virtue of reducing the incentive for plaintiffs'

attorneys to over-litigate or 'churn' cases." *In re Skelaxin (Metaxalone) Antitrust

Litig.*, 2014 WL 2946459, *1 (E.D. Tenn. Jun. 30, 2014) (citations omitted). In other

words, the percentage-of-the-fund method "'provides a powerful incentive for the

efficient prosecution and early resolution of litigation.'" *Se. Milk*, 2013 WL

2155387, at *2 (quoting *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir.2005)).[4]

District courts in this Circuit have virtually uniformly shifted to the percentage method in awarding fees in common fund cases. *See Skelaxin,* 2014 WL 2946459, at *1 ("The Court recognizes that the trend in "common fund cases has been toward use of the percentage method."); *Cardizem,* 218 F.R.D. at 532 (courts in the Sixth Circuit have "indicated a preference for the percentage-of-the-fund method in common fund cases"); *Delphi*, 248 F.R.D. at 502 (E.D. Mich. 2008); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007); *Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *17; *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *5 (S.D. Ohio July 11, 2014).

Finally, since this case is a securities class action, it is important to recognize that application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. § 78u-1(a)(6) (emphasis added). In fact, several courts have concluded that Congress, in using this language, expressed a

---

[4] The lodestar method "has been criticized for being too time-consuming of scarce judicial resources," as it requires that courts "pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier." *Rawlings*, 9 F.3d at 516-17. Moreover, "[w]ith the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement." *Id*. at 517.

preference for the percentage method when determining attorneys' fees in securities class actions.[5]

### C. The Requested Attorneys' Fees Are Reasonable Under The Percentage-Of-The Fund Method

Plaintiffs' Counsel's fee request of 7% of the Settlement Amount falls well below the range of fees awarded in the Sixth Circuit on a percentage basis in complex common fund cases. *See Se. Milk*, 2013 WL 2155387, at *3 (finding that 33% "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19 ("the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions"); *Delphi*, 248 F.R.D. at 502-03 ("18% and 20% fee requests appear to be more than reasonable . . . when compared to the range of percentage fee awards generally accepted in this District."); *Bessey v. Packerland Plainwell, Inc.*, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) (awarding 33%, and noting that "[e]mpirical studies show that . . . fee awards in class actions average around one-third of recovery"); *Cardizem*, 218 F.R.D. at 532 (recognizing that fees in the 20–30% range are generally awarded in this Circuit); Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?* 158 U. Pa. L. Rev. 2043, 2063 (2010) ("although the mean and median fee awards in federal court are 25%, there are many awards at the 33% level . . .")).

---

[5] *See, e.g., Delphi*, 248 F.R.D. at 502; *Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012); *In re High-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *12 (S.D.N.Y. Dec. 19, 2014).

At 7%, the request fee is far below: (i) what some courts consider "the 'benchmark' percentage";[6] and (ii) percentage fee awards granted in many other complex class actions within the Sixth Circuit and elsewhere. *See In re General Motors Corp. Sec. & Derivative Litig.*, No. 06-md-1749, slip op. at 2 (E.D. Mich. Jan. 6, 2009), ECF No. 139 (Graziano Decl. Ex. 5) (15% of $303 million)[7]; *Delphi*, 248 F.R.D. at 505 (18% of recovery with a potential value of $284,100,000); *In re CMS Energy Sec. Litig.*, No. 02-cv-72004, 2007 U.S. Dist. LEXIS 96786, at *14 (E.D. Mich. Sept. 6, 2007) (22.5% of $200 million); *Cardinal Health*, 528 F. Supp. 2d at 770 (18% of $600 million); *Se. Milk*, 2013 WL 2155387, at *8 (33% of $158.6 million); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *7 (N.D. Ohio Feb. 26, 2015) (30% of $147.8 million); *In re DPL Inc. Sec. Litig.*, 307 F. Supp. 2d 947, 954 (S.D. Ohio 2004) (20% of $110 million); *In re Dollar General Corp. Sec. Litig.*, No. 3:01-0388, slip op. at 16 (M.D. Tenn. May 24, 2002), ECF No. 209 (Graziano Decl. Ex. 6) (20.9% of $162 million); *In re Old CCA Sec. Litig./In re Prison Realty Sec. Litig.*, No. 3:99-458, 2001 U.S. Dist. LEXIS 21942, at *3 (M.D. Tenn. Feb. 9, 2001) (30% of $104 million); *Skelaxin*, 2014 WL

---

[6] *Skechers*, 2012 WL 3312668, at *10; *Fournier v. PFS Invs., Inc.*, 997 F.Supp. 828, 832 (E.D. Mich.1998) ("The 'benchmark' percentage for this standard has been 25%, with the ordinary range for attorney's fees between 20–30%."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

[7] Certain of the slip opinions cited herein, and attached as exhibits to the Graziano Declaration, do not provide information on the size of the settlement on which the fee was awarded or the lodestar multiplier. Therefore, where necessary, excerpts from the underlying fee briefs have also been included in these exhibits.

2946459, at *1 (awarding one-third of a $73 million settlement fund, finding that a "counsel fee of one-third is fair and reasonable and fully justified" and "within the range of fees ordinarily awarded.").[8]

Moreover, courts have repeatedly awarded fees of greater than 7% where a settlement was reached during the pendency of a motion to dismiss or shortly after, and where no or very limited formal discovery had been obtained as a result of the PSLRA discovery stay. *See General Motors*, slip op. at 2 (Graziano Decl. Ex. 5) (awarding 15% of $303 million settlement prior to decision on motion to dismiss); *Dollar General*, slip op. at 16 (Graziano Decl. Ex. 6) (awarding 20.9% of $162 million settlement prior to resolution of motion to dismiss).[9]  Courts do so based on

_____

[8] *See also In re Williams Sec. Litig.,* No. 02-cv-72-SPF, ECF No. 1638 at 2 (N.D. Okla. Feb. 12, 2007) (25% of $311 million); *In re Comverse Tech., Inc., Sec. Litig.*, No. 06-1825, 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010) (25% of $225 million); *In re DaimlerChrysler AG Sec. Litig.*, No. 00-0993 (KAJ), slip op. at 1 (D. Del. Feb. 5, 2004), ECF No. 971 (Graziano Decl. Ex. 7) (22.5% of $300 million); *New Jersey Carpenters Health Fund v. Residential Capital LLC*, No. 08-cv-8781-HB, slip op. at 2 (S.D.N.Y. July 31, 2015), ECF No. 353 (Graziano Decl. Ex. 8) (20.75% of $335 million); *Wyatt v. El Paso Corp.*, No. 02-2717, slip op. at 2 (S.D. Tex. Mar. 9, 2007), ECF No. 376 (Graziano Decl. Ex. 9) (15.3% of $285 million); *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1066 (E.D. Mo. 2002) (18% of $490 million).

[9] *See also Nieman v. Duke Energy Corp.,* No. 3:12-cv-00456-MOC-DSC, slip op. at 1 (W.D.N.C. Nov. 2, 2015), ECF No. 112 (Graziano Decl. Ex. 10) (awarding 18% of $146.25 million settlement reached prior to resolution of motion to dismiss); *In re Satyam Computer Svc. Sec. Litig.*, No. 09-MD-2027, slip op. at 2 (S.D.N.Y. Sept. 13, 2011), ECF No. 365 (Graziano Decl. Ex. 11) (awarding 17% of $150.5 million settlement reached prior to resolution of motion to dismiss); *In re Am. Express Fin. Advisors Sec. Litig.*,  No. 04 Civ. 1773 (DAB), slip op. at 8 (S.D.N.Y. July 18, 2007), ECF No. 170 (Graziano Decl. Ex. 12) (awarding 27% of $100 million settlement

a recognition that one of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case once sufficient information about the value of the claims could be determined through investigation and careful analysis of the legal and factual issues, thus avoiding the need for costly and lengthy formal discovery. *See Se. Milk*, 2013 WL 2155387, at *2 (quoting *Wal-Mart*, 396 F.3d at 121 (recognizing that one of the merits of the percentage method is that it "provides a powerful incentive for the efficient prosecution and early resolution of litigation")); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 964 (E.D. Tex. 2000) ("A flash of brilliance by a trial lawyer may be worth far more to his clients than hours or days of plodding effort. Few among us would contend that an operation by a gifted surgeon who removes an appendix in fifteen minutes is worth only one sixth of that performed by his marginal colleagues who require an hour and a half for the same operation").

This reasoning is particularly appropriate in this case, where Lead Counsel engaged in an extremely thorough investigation of the facts underlying the alleged fraud, as demonstrated by the 543-page Complaint, and achieved a modification of the PSLRA stay, which allowed for the review and analysis of over four million of pages of documents prior to settlement. As a result of this and other work, Lead Counsel was able to negotiate the Settlement from a position of strength at a

---

fund, representing a 2.8 multiplier, where settlement was reached while motion to dismiss was pending).

relatively early stage of the litigation.  Lead Counsel respectfully submit that their efficient and effective litigation of this action should be rewarded – not penalized.

### D.      A Review Of The Sixth Circuit Factors Confirms That The Requested 7% Fee Is Fair And Reasonable

In reviewing the reasonableness of the requested award, the Sixth Circuit requires district courts to consider six factors, known as the *Ramey* factors:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis [the lodestar cross-check]; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194-97 (6th Cir. 1974); *Swigart*, 2014 WL 3447947, at *6.  These factors support an award of the requested attorneys' fees.

### 1.      The Value Of The Benefit Rendered To The Settlement Class Supports The Requested Fee

Courts consistently recognize that the result achieved is the primary factor to be considered in making a fee award.  *See Delphi*, 248 F.R.D. at 503; *In re DPL Inc., Sec. Litig.*, 307 F. Supp. 2d at 951.

Here, the Settlement provides an immediate and certain benefit to the Settlement Class in the form of a $300 million cash payment and represents (if approved) the second largest corporate settlement of a PSLRA case within the Sixth Circuit.  It also represents a significant portion of the recoverable damages in the Action as determined by Lead Plaintiff's damages expert, particularly after

considering arguments that could be made by Defendants concerning loss causation issues. Yet, to fully appreciate the Settlement, it must be juxtaposed against the procedural and substantive hurdles that Lead Plaintiff would have had to overcome in order to prevail in this complex securities fraud litigation.

At the time the Parties reached their agreement in principle to settle, the Court had not yet ruled on Defendants' motions to dismiss. While Lead Counsel believes that the motions would have been denied, it also understood that Defendants raised credible arguments directed at the adequacy of Lead Plaintiff's allegations concerning the accounting for warranty reserves, whether any internal control deficiencies were operational rather than financial, and whether Defendants' safety-related statements were mere puffery. *See* ¶¶ 68-71. Defendants also cogently argued that Lead Plaintiff had failed to allege sufficient knowledge or recklessness to satisfy the requisite standard for scienter. For example, Defendants strongly contended that Lead Plaintiff did not allege meaningful insider trading; that Lead Plaintiff did not specifically allege facts supporting the assertion that any of the settled lawsuits arising out of the ignition switch defect were known to or concealed by the Individual Defendants; that Lead Plaintiff's allegations concerning the certifications of GM's internal controls were fraud by hindsight; and that the Individual Defendants' motivation to keep their jobs and salaries does not support a strong inference of scienter. *See* ¶¶ 72-74.

These were not idle arguments, and there existed a very real risk that the Court would dismiss Lead Plaintiff's Complaint pursuant the stringent pleading standards of the PSLRA. As former Supreme Court Justice Sandra Day O'Connor recognized

13

in *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009), "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." Accordingly, had the litigation continued, there is simply no guarantee that Lead Plaintiff would have prevailed at the pleading stage.

Even assuming that Lead Plaintiff overcame each of the above risks and successfully established liability, it still would have confronted considerable challenges in establishing loss causation and damages. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"); *Chamberlain v. Reddy Ice Holdings, Inc.*, 757 F. Supp. 2d 683, 714 (E.D. Mich. 2010) ("a plaintiff must show that an economic loss occurred after the truth behind the misrepresentation or omission became known to the market."). While Lead Plaintiff would have argued that the declines in GM's stock price were attributable to corrections of the alleged misstatements and omissions, Defendants had substantial arguments that the declines in GM's stock price were not caused by revelations of the true facts concerning GM's handling of the ignition-switch defect, and that even if some portion of the declines in GM's stock price were caused by such revelations, those declines were not statistically significant. *See* ¶¶ 76-85. Had any of Defendants' arguments been accepted in whole or in part, it could have eliminated or, at a minimum, significantly limited any potential recovery.

In addition to the aforementioned risks, Lead Plaintiff faced other significant hurdles, including that: (i) the Court might not certify the Class; (ii) the record in

14

discovery might not have supported Lead Plaintiff's allegations; (iii) some or all of Lead Plaintiff's experts, including experts on accounting, internal controls, motor vehicles and damages, would have opinions that were excluded or not accepted by the jury; and (iv) the substantial risks of costs and delays if settlement were not achieved now. Finally, even if Lead Plaintiff had succeeded in proving all elements of its case at trial and obtaining a jury verdict, Defendants would almost certainly have appealed – a process that could possibly extend for years and might lead to a smaller recovery, or no recovery at all. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015), *reh'g denied* (July 1, 2015) (reversing jury verdict awarding investors $2.46 billion on loss causation and damages grounds and remanding for a new trial on these issues); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed on appeal on loss causation grounds).

## 2. The Value Of The Services On An Hourly Basis, And A Lodestar Cross-Check, Supports The Requested Fee

When applying the percentage-of-the-fund method, courts will look at the hours expended by counsel, either as a factor in the fee analysis, or as an independent cross-check to prevent counsel from receiving a windfall. *See Cardinal*, 528 F. Supp. 2d at 764; *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *18. Counsel's lodestar is determined by multiplying "the number of hours reasonably expended on the case by a reasonable hourly rate." *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005). In a complex, multidistrict litigation, reasonable hourly rates may be determined with reference "to national markets, an area of

specialization, or any other market [the court believes] is appropriate to fully compensate attorneys in individual cases." *McHugh v. Olympia Entm't, Inc.*, 37 Fed. Appx. 730, 740 (6th Cir. 2002) ("A court's choice not to apply local market rates for attorney fees is not an abuse of discretion."); *see also In re: UnumProvident Corp. Derivative Litigation*, No. 1:02-CV-386, 2010 WL 289179, at *6 (E.D. Tenn. Jan. 20, 2010) (in complex case, approving rates charged by plaintiff's out-of-town counsel where defendants were also represented by large out-of-town firms).

As shown in the declarations submitted with this motion, Plaintiffs' Counsel and their professional staff have worked 25,527.70 hours on this case (up to November 11, 2015). *See* Graziano Decl. ¶ 110, and Exhibits 3A, 3B, 3C and 3D thereto.[10]   Applying the rates charged by counsel to the hours expended yields a "lodestar" of $10,873,042. *See id*. Thus, the requested fee of 7%, or $21 million, represents a multiplier on Plaintiffs' Counsel's lodestar of 1.9.

In awarding a fee under the lodestar method or conducting a cross-check in complex class actions, Courts have found it appropriate to apply a multiplier to counsel's lodestar to reflect factors such as the contingency risks of the litigation and

---

[10] As is customary in seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, included with each Plaintiffs' Counsel's declaration is a schedule identifying the lodestar of each firm (by individual, position, billing rate, and hours billed). *See Se. Milk*, 2013 WL 2155387, at n.3 ("Counsel have provided to the Court summary schedules indicating the number of hours spent by the attorneys involved in this litigation and the lodestar calculation"). *See also In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 306 (3d Cir. 2005) (the cross-check "need entail neither mathematical precision nor bean-counting.").

the quality of the work performed. *See Bowling v. Pfizer, Inc.,* 922 F. Supp. 1261, 1278 (S.D. Ohio 1996); *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010). Courts within the Sixth Circuit have awarded fees with much higher multipliers than counsel are seeking here. *See Cardinal Health*, 528 F. Supp. 2d at 768 (approving multiplier of 6, and observing that "[m]ost courts agree that the typical lodestar multiplier" on a large class action "ranges from 1.3 to 4.5"); *Bailey v. AK Steel Corp.*, No. 1:06-CV-468, 2008 WL 553764, at *3 (S.D. Ohio Feb. 28, 2008) (awarding multiplier of 3.04, noting that "[c]ourts typically … increas[e] the lodestar amount by a multiple of several times itself" and identifying a "normal range of between two and five"); *General Motors*, slip op. at 2 (Graziano Decl. Ex. 5) (multiplier of 3.7); *In re CMS Energy Sec. Litig.*, No. 02-cv-72004, 2007 U.S. Dist. LEXIS 96786, at *14 (E.D. Mich. Sept. 6, 2007) (2.61 multiplier); *Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, at *31 (M.D. Tenn. Aug. 11, 1999) (3.8 multiplier). Consequently, whether analyzed as a "cross-check" on the percentage-of-the-fund method – or under the lodestar method – this factor supports a finding that the requested fee is reasonable.

### 3.  Society's Stake In Rewarding Attorneys Who Enforce The Securities Laws Supports The Requested Fee

The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits. *See Basic Inc. v. Levinson,* 485 U.S. 224, 230-31 (1988). Adequate compensation is, of course, a necessary component of encouraging attorneys to assume the risk of

litigation in the public interest. Indeed, without adequate compensation, it would be difficult to retain the caliber of lawyers necessary, willing, and able to properly prosecute to a favorable conclusion complex, risky, and extremely expensive securities class actions such as this. Thus, "[i]n evaluating the reasonableness of a fee request, the court also must consider society's stake in rewarding attorneys who produce a common benefit for class members in order to maintain an incentive to others." *Delphi*, 248 F.R.D. at 503; *Ramey,* 508 F.2d at 1196.

It simply cannot be disputed that society benefits from fair and efficient capital markets and that private enforcements of the securities laws is a necessary component thereof. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 313 (2007) (private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC). Moreover, class actions are often the only way economically feasible way for investors – both large and small – to obtain compensation when they are victims of securities fraud. Accordingly, here, in a class action involving private enforcement of the securities laws plainly weighs in favor of the requested award. *See Eltman v. Grandma Lee's, Inc*., No. 82 CIV. 1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding. The concept of a private attorney acting as a 'private attorney general' is vital to the continued enforcement and effectiveness of the Securities Acts.") (citation omitted); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001) ("Attorneys who take on

18

class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources.").

### 4. The Contingent Nature Of The Representation Supports The Requested Fee

"Whether counsel's services were undertaken on a contingent fee basis is another factor for the Court to consider in evaluating a fee request." *Delphi*, 248 F.R.D. at 503-04. Here, Plaintiffs' Counsel have prosecuted this action entirely on a contingent basis, knowing that it possibly could last for four or five years, require the expenditure of thousands of attorney hours and millions of dollars in expenses and ultimately result in a loss at summary judgment, trial or on appeal. In fact, Plaintiffs' Counsel have incurred over $775,000 in out-of-pocket expenses litigating for the benefit of the Settlement Class, received no compensation during the almost two years this action has been pending, and were never guaranteed reimbursement of these costs or the payment of any fee. Yet, as a result of Plaintiffs' Counsel's efforts, a $300 million recovery was obtained. This supports a finding that the fee request is reasonable. *See id.*; *Stanley v. U.S. Steel Co.*, No. 04-74654, 2009 WL 4646647, at *3 (E.D. Mich. Dec. 8, 2009) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.").

### 5. The Complexity Of The Litigation Supports The Requested Fee

The complexity of the litigation is a significant factor to be considered in determining the reasonableness of an attorneys' fee award. *See Delphi*, 248 F.R.D. at 504. As numerous courts have recognized, "[s]ecurities litigation class actions are inherently complex." *New England Health Care*, 234 F.R.D. at 634; *Fogarazzo*

19

*v. Lehman Bros., Inc.*, No. 03-cv-5194 (SAS), 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011).  The legal and factual issues are extremely complicated and highly uncertain in outcome.  *Maher v. Zapata Corp.,* 714 F.2d 436, 455 (5th Cir. 1983) (securities litigation is '"notoriously difficult and unpredictable."').

This case was no different.  In addition to the normal difficulties involved in prosecuting a securities class action, this case involved complicated accounting principles, alleged wrongdoing that took place since 2001, and the production – to date – of over 13 million of pages of documents, all of which added to the complexity.  *See Rite Aid*, 396 F.3d at 305 ("Given the complexity of the accounting matters at issue, the volume of documents, the shifting factual sands that required several amended complaints . . . we see no abuse of discretion in the District Court's finding the matter was a complex one."); *In re Datatec Sys., Inc. Sec. Litig.*, Case No. 04-cv-525, 2007 WL 4225828, at *7 (D.N.J. Nov. 28, 2007) ("securities fraud class actions involving alleged violations of accounting principles are complex actions to prosecute").  The litigation also raised complex questions related to loss causation, damages and the auto industry, all of which required development of a substantial factual record and extensive consultation with experts.  Accordingly, the complexity of the litigation supports the conclusion that the requested fee is fair and reasonable.

## 6.    The Professional Skill And Standing Of Counsel Supports The Requested Fee

Plaintiff's Counsel include locally and nationally known leaders in the fields of securities class actions and complex litigation.  *See* Firm Biographies, attached to

Graziano Decl. as Exhibits 3A-3 and 3B-3.  The quality of the representation is best demonstrated by the substantial benefit achieved for the Settlement Class and the effective and efficient prosecution and resolution of the Action under difficult and challenging circumstances.  The substantial recovery obtained for the Settlement Class is the direct result of the efforts of highly skilled and specialized attorneys who possess significant experience in the prosecution of complex securities class actions.  From the outset of the Action, Plaintiffs' Counsel engaged in a concerted effort to obtain the maximum recovery for the Settlement Class and committed considerable resources and time in the research, investigation, and prosecution of the case.  Based upon Plaintiffs' Counsel's diligent efforts and their skill and reputation, they were able to negotiate a highly favorable result despite the many risks inherent in the case.  Such quality, efficiency, and dedication support the requested fee.

The quality of the work performed by counsel in attaining the Settlement should also be evaluated in light of the quality of opposing counsel.  Plaintiffs' Counsel were opposed in this case by highly skilled defense firms who spared no effort in the defense of their clients.  Plaintiffs' Counsel were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that represent a fair, reasonable and adequate recovery to the Settlement Class.  "The ability of [Plaintiffs'] Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee requested."  *Delphi,* 248 F.R.D. at 504.

For the reasons set forth above, Plaintiffs' Counsel respectfully request that the Court grant their request for an attorneys' fee award in the amount of 7% of the Settlement Amount.

### E.    Plaintiffs' Counsel's Expenses Are Reasonable And Were Necessarily Incurred To Achieve The Benefit Obtained

Plaintiffs' Counsel also request reimbursement of the expenses they incurred in connection with the prosecution of this Action in the amount of $775,746.12.  *See* Graziano Decl. ¶ 122.  "Under the common fund doctrine, 'class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses.'"  *New England Health*, 234 F.R.D. at 634-35; *see Se. Milk*, 2013 WL 2155387, at *7 ("Expense awards are customary" in common fund cases) (citing *In re F & M Distribs., Inc.*, 1999 U.S. Dist. LEXIS 11090, at *19 (E.D. Mich. June 29, 1999)).

In determining which expenses are reasonable and compensable the question is whether such costs are of the variety typically billed by attorneys to paying clients in similar litigation.  *See New England Health,* 234 F.R.D. at 634-35.  Here, the categories of expenses are detailed in Plaintiffs' Counsel's declarations, setting forth

the specific category of expenses incurred and the amount, and are the type routinely charged to hourly clients.  *See* Graziano Decl., Exh. 3A, 3B, 3C and 3D.[11]

The largest component of Plaintiffs' Counsel's expenses, over $430,000, or 56%, was expended for document management costs related to the creation and maintenance of an electronic database that enabled Plaintiffs' Counsel to efficiently and effectively search and review the over 13 million pages of documents produced in this litigation. ¶ 125.  Another large component of Plaintiffs' Counsel's expenses, approximately 19%, is for the costs of experts and consultants, including the retention of experts with significant experience in the accounting and automotive fields, and with expertise opining on damages, loss causation, and market efficiency in securities class actions.  ¶ 126.  Among other things, these experts and consultants were utilized in drafting the Complaint, preparing the opposition to the motions to dismiss, and in settlement negotiations.  ¶¶ 23, 25, 59.  Other expenses include costs associated with online legal research; retention of specialized bankruptcy counsel; travel, meals and lodging expenses; copying; postage; overnight delivery; and long

---

[11] *See also Se. Milk*, 2013 WL 2155387, at *8 ("Although the declarations submitted by class counsel are not itemizations of all of the expenses incurred, but rather an aggregate listing of the expenses for each category, the Court finds the declarations submitted sufficiently detailed and the Court is persuaded that the expenses are legitimate and are reasonable in the case and will approve payment to class counsel from the common settlement fund in the amount of $798,237.66 as reimbursement for their out-of-pocket expenses.").

distance calls.  *Id.* ¶¶ 127-129.  Reimbursement of similar expenses is routinely permitted.[12]

Additionally, the amount of expenses for which reimbursement is now sought, a total of $778,649.83 (including Lead Plaintiff's costs and expenses), is less than the $1 million maximum amount stated in the Notice.  *See* Fraga Decl., Exhibit A ¶¶ 5, 57.

### F. Lead Plaintiff New York Teachers Should Be Awarded Its Reasonable Costs Under The PSLRA

Lead Counsel also seeks approval for $2,903.71 in costs incurred by Lead Plaintiff New York Teachers directly related to its representation of the Settlement Class.  *See* Indelicato Decl., attached as Exhibit 2 to Graziano Decl., ¶¶ 15-17.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).

As set forth in the Indelicato Declaration, New York Teachers has incurred or will incur a total of $2,903.71 in unreimbursed expenses relating to its representation of the Settlement Class; specifically, for the costs of attending the August 2014 Lead Plaintiff hearing and the upcoming final approval hearing.  Indelicato Decl. ¶ 16.

---

[12] *See Delphi*, 248 F.R.D. at 504-05 (approving reimbursement of $1.3 million in costs and expenses for "such items as accounting and damages expert and consultant fees, management and photocopying of documents, on-line research, messenger service, postage, express mail and overnight delivery, long distance and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of this action.").

The Notice informed potential Settlement Class Members that Lead Plaintiff would seek reimbursement for its expenses and the expenses for which reimbursement are sought are reasonable.   Accordingly, the request for reimbursement is fully justifiable under the PSLRA and should be granted.

## III.   CONCLUSION

Plaintiffs' Counsel respectfully request that the Court award them attorneys' fees in the amount of 7% of the Settlement Amount; $775,746.12 in Plaintiffs' Counsel's Litigation Expenses; and $2,903.71 as reimbursement to Lead Plaintiff New York Teachers, as authorized by the PSLRA.

Dated:  March 9, 2016

Respectfully submitted,

/s/ Salvatore J. Graziano
Salvatore J. Graziano
James A. Harrod
**BERNSTEIN LITOWITZ
  BERGER & GROSSMANN LLP**
1251 Avenue of the Americas, 44th Fl.
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Salvatore@blbglaw.com
Jim.Harrod@blbglaw.com

*Lead Counsel for Lead Plaintiff
and the Settlement Class*

**THE MILLER LAW FIRM, P.C.**
E. Powell Miller (P39487)
Marc L. Newman (P51393)
Sharon S. Almonrode (P33938)
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
mln@millerlawpc.com
ssa@millerlawpc.com

*Local Counsel for Lead Plaintiff
and the Settlement Class*

#965501

25