UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEW YORK STATE TEACHERS'
RETIREMENT SYSTEM, Individually
and on Behalf of All Other Persons
Similarly Situated,

                                      Civil Case No. 14-11191

              Plaintiffs,              Honorable Linda V. parker

v.

GENERAL MOTORS COMPANY,
DANIEL F. AKERSON, NICHOLAS S.
CYPRUS, CHRISTOPHER P. LIDDELL,
DANIEL AMMANN, CHARLES K. STEVENS, III,
MARY T. BARRA, THOMAS S. TIMKO, and GAY P. KENT,

              Defendants.
_____/

## OPINION AND ORDER GRANTING (1) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND APPROVAL OF PLAN ALLOCATION (ECF NO. 100) AND (2) LEAD PLAINTIFF'S MOTION FOR ATTORNEY FEES AND REIMBURSEMENT OF LITIGATION EXPENSES (ECF NO. 101)

This class action lawsuit brought under the Private Securities Litigation

Reform Act of 1995 ("PSLRA") alleges misrepresentations and omissions

stemming from the failure of General Motors Company ("GM") and certain GM

executives (collectively "Defendants") to timely recall numerous GM vehicle

models due to a defective ignition switch and to properly account for the liabilities

that were the product of the defect.  New York State Teachers' Retirement System

("NYSTRS"), suing on behalf of itself and all other persons similarly situated, claims that Defendants' misrepresentations and omissions related to the ignition switch defect resulted in the artificial inflation of the price of GM Common stock and, when the truth was revealed through a series of disclosures, the decline in the value of the stock. For purposes of effectuating settlement, this Court approved a Class consisting of all persons and entities who purchased or otherwise acquired GM common stock from November 17, 2010 through July 24, 2014, inclusive (the "Settlement Class Period"), and who were damaged thereby (hereafter "Class" or "Settlement Class"). NYSTRS and Defendants in fact reached a settlement, which the Court preliminarily approved on November 20, 2015 in an Order Preliminarily Approving Settlement and Providing for Notice. (ECF No. 95.)

The matter is now before the Court on NYSTRS' Motion for Final Approval of Settlement and Approval of Plan of Allocation and NYSTRS' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses. (ECF Nos. 100, 101.) The Court conducted a fairness hearing on April 20, 2016. For the reasons set forth below, the Court is granting both motions.

## I. Background

### A. Generally

This lawsuit, initially captioned *George Pio v. General Motors Company*, was filed on March 21, 2014. (ECF No. 1.) Thereafter, several movants sought

2

appointment as lead plaintiff and approval of their selection of lead counsel,

including NYSTRS and Menorah Mivtachim Insurance Ltd, Menora Mivtachim

Pensions and Gemel Ltd. (collectively "Menora Group").  Briefing on the issue

extended into June 2014.  On August 20, 2014, the Court held a hearing on the

issue of appointing lead plaintiff and the selection of lead counsel and, on October

24, 2014, the Court entered an order appointing NYSTRS as Lead Plaintiff and

approved its selection of Bernstein Litowitz Berger & Grossmann LLP

("BLB&G") as Lead Counsel.  (ECF No. 44.)

In response, on November 3, 2014, the Menora Group filed a motion for

reconsideration or, in the alternative, for interlocutory appeal and a stay of

proceedings.  (ECF No. 46.)  The Court issued a notice on November 5, 2014,

informing the parties that it would allow any party wishing to respond to the

Menora Group's motion to do so.  (ECF No. 49.)  Defendants and NYSTRS

thereafter filed response briefs.  (ECF Nos. 50, 51.)  The Menora Group filed a

reply brief on November 19, 2014.  (ECF No. 53.)  In an opinion and order entered

December 8, 2014, this Court denied the Menora Group's requests for

reconsideration, certification for interlocutory appeal, and to stay proceedings.

(ECF No. 54.)

Undeterred, the Menora Group sought relief from the United States Court of

Appeals for the Sixth Circuit by filing a petition for writ of mandamus vacating the

Court's October 24, 2014 decision and seeking a stay of the district court proceedings. *In re Menora Mivtachim Ins. Ltd., et al.*, No. 15-1055 (6th Cir. Feb. 3, 2015), ECF No. 4.  NYSTRS filed its opposition to the Menora Group's petition on February 13, 2015.  *Id*., ECF No. 13.  On March 17, 2015, the Sixth Circuit denied the Menora Group's mandamus petition.  *Id*., ECF No. 15.

In the meantime, following an extensive factual and legal investigation by Lead Counsel, NYSTRS filed a 543-page Amended Complaint on January 15, 2015.  (ECF No. 62.)  The Amended Complaint asserts claims against: (i) all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder; and (ii) the individual defendants under Section 20(a) of the Exchange Act.  (*Id*.)  The Amended Complaint alleges that in order to hide the full cost and liabilities associated with GM's defective vehicles, Defendants made materially false and misleading statements and omitted material facts about GM"s liabilities, internal controls, and commitment to safety.  (*Id*.)  The Amended Complaint further alleges that due to these misrepresentations and omissions, the price of GM common stock was artificially inflated and declined when the truth was revealed through a series of corrective disclosures beginning March 11, 2014.  (*Id*.)  The Amended Complaint identified the Class Period as from November 17, 2010 to July 24, 2014, inclusive.

It also identified the alleged corrective disclosures as beginning February 7, 2014, and concluding July 24, 2014.

Shortly after filing the Amended Complaint, NYSTRS filed a motion for partial modification of the PSLRA discovery stay.[1]  (ECF No. 64.)  NYSTRS sought an order partially modifying the stay to allow: (i) discovery of documents Defendants already had gathered, reviewed, and produced, or would produce, to private litigants in related multi-district litigation pending in the U.S. District Court for the Southern District of New York ("MDL Litigation"); and (ii) service of document preservation subpoenas on important third parties, including Deloitte & Touche (GM's auditor) and Delphi (the manufacturer of the defective ignition switch).  Defendants opposed the motion.  (ECF No. 65.)  NYSTRS filed a reply brief.  (ECF No. 66.)  On April 8, 2015, the Court issued an opinion and order granting NYSTRS' motion.  (ECF No. 78.)

While NYSTRS' motion was pending, Defendants filed motions to dismiss the Amended Complaint on March 13 and 18, 2015.[2]  (ECF Nos. 70, 73.)

---

[1] The PSLRA imposes an automatic stay of discovery while a motion to dismiss is pending.  15 U.S.C. § 78u-4(b)(3)(B).  While Defendants had not yet filed their motion to dismiss when NYSTRS moved to lift the automatic stay, the Court and the parties were aware that such a motion would be filed shortly thereafter in accordance with the Court's scheduling order which established a March 13, 2015 deadline for the motion.  (ECF No. 48.)

[2] All defendants, except Gay P. Kent, filed a fifty-eight page motion to dismiss on March 13, 2015.  (ECF No. 70.)  Defendant Kent joined in that motion on March 18, 2015.  (ECF No. 73.)

Defendants raised numerous arguments in support of their motions.  Specifically, Defendants contended that NYSTRS' allegations of materially false and misleading statements and omissions concerned "soft" and not "hard" information, thereby requiring NYSTRS to allege that Defendants actually knew the statements were false; however, the Amended Complaint lacks sufficient detail to make such a showing.  Defendants further argued that the Amended Complaint fails to adequately allege actionable misstatements or material misstatements regarding GM's commitment to safety and fails to establish the "strong inference" of scienter required to establish liability for securities fraud.  Defendants maintained that due to the insufficiency of NYSTRS' allegations concerning a primary violation of the securities laws, it failed to adequately plead Section 20(a) control person liability against the individual defendants.  Over the next several motions, Defendants' motions to dismiss were fully briefed, with NYSTRS filing a fifty-four page response brief on May 15, 2015 (ECF No. 86), and Defendants filing reply briefs on July 10, 2015.  (ECF Nos. 89, 90.)

While the parties briefed Defendants' motions to dismiss, they engaged in discussions concerning the discovery permitted in the Court's April 8, 2015 opinion and order and reached a stipulation governing Defendants' production of the documents already produced in the MDL Litigation.  (ECF No. 102 ¶ 53.)  The Court approved the parties' stipulation in an order signed April 21, 2015.  (ECF

6

No. 79.)  Pursuant to the parties' stipulation, Defendants were required to produce millions of pages of documents (in fact, over 13 million) beginning July 13, 2015 through September 11, 2015.  (ECF No. 102 ¶ 54.)  Lead Counsel began reviewing the documents upon receiving them from GM.  (*Id*. ¶¶ 54-56.)  In accordance with the Court's April 8, 2015 order, Lead Counsel also served sixteen document preservation subpoenas on third parties.  (*Id*. ¶ 57.)

In August 2015, Lead Counsel and counsel for GM began discussing dates and mediators for a process to potentially resolve the litigation.  (*Id*. ¶ 58.)  By late August, the parties had agreed to a mediator and had scheduled the mediation for October 21, 2015.  (*Id*.)  The parties also agreed to exchange opening mediation briefs on September 23, 2015.  (*Id*.)

In connection with the contemplated mediation process, NYSTRS worked with an expert to assess the aggregate damages suffered by the Class and to formulate a potential settlement demand to be made to Defendants on or before the mediation.  (*Id*. ¶ 59.)  By early September 2015, NYSTRS also had substantially completed a draft of its mediation brief and an analysis of the strengths, risks, and potential issues in the litigation.  (*Id*. ¶ 60.)  Lead Counsel's review of the documents produced thus far in the litigation substantially informed NYSTRS' analysis.  (*Id*.)

7

Leading up to the mediation, counsel for the parties engaged in intensive, direct settlement discussions.  (*Id.* ¶ 61.)  Counsel for GM subsequently advised NYSTRS that a demand should be made directly to GM's Board of Directors for consideration.  (*Id.* ¶ 62.)  Lead Counsel thereafter prepared a detailed demand, which was transmitted to the GM Board on September 13, 2015.  (*Id.*)  The following day, a settlement (the "Settlement") was reached and a term sheet reflecting the agreement's principal terms was signed.  (*Id.*)

On November 13, 2015, NYSTRS submitted to the Court a Stipulation and Agreement of Settlement, executed by the parties (ECF No. 94-2), along with a motion for preliminary approval of the settlement.  (ECF No. 94.)  The Settlement presented to the Court (and now before the Court for final approval) is a detailed, fleshed out agreement based on the term sheet.  The Stipulation and Agreement of Settlement included the parties' agreement for certification of a Class for settlement purposes only, of all persons and entities who purchased or otherwise acquired GM common stock during the period from November 17, 2010 through July 24, 2014, inclusive (the "Settlement Class period"), and who were damaged thereby.  (ECF No. 94-2 ¶ 1(rr).)  In addition to any persons who exclude themselves from the Class by submitting a request for exclusion, the Settlement excludes from the Class the following individuals: Defendants, the directors and officers of GM at all relevant times, members of their immediate families and their

8

heirs, successors, or assigns, and any entity in which any Defendant or any member of the immediate family of any individual defendant has or had a controlling interest.  (*Id*.)  The Court entered an Order Preliminarily Approving Settlement and Providing for Notice on November 20, 2015.  (ECF No. 95.)

In the Settlement, the parties agreed to the certification of the action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), certification of NYSTRS as Class Representative for the Settlement Class, and appointment of Lead Counsel and Class Counsel for the Settlement Class pursuant to Federal Rule of Civil Procedure 23(g).  (ECF No. 94, Ex. 1 ¶ 2.)  The parties further agreed to authorize Lead Counsel to retain the Garden City Group, LLC ("GCG") to supervise and administer the notice procedure in connection with the settlement and to process claims.  (*Id*. ¶ 7.)

As reflected in the declarations of Jose C. Fraga, Senior Director of Operations for GCG, the parties have fully complied with the terms of the Preliminary Approval Order, including mailing Class members Notice of the following: (a) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (b) the settlement fairness hearing; and (c) Lead Counsel's motion for attorneys' fees and reimbursement of litigation expenses.  (ECF No. 102, Ex. 1 ¶¶ 2-5, 7-8; ECF No. 119, Ex. 1 ¶ 2.)  Since December 21, 2015, GCG has disseminated 1,196,822 copies of the Notice and Proof of Claim form to

9

potential Class members.  (ECF No. 119, Ex. 1 ¶ 2.)  Additionally, the Notice was

published in *USA Today* and the *Wall Street Journal* and transmitted over the *PR*

*Newswire* on January 5, 2016.  (ECF No. 102, Ex. 1 ¶ 9, Exs. B-D.)  GCG also

established and is maintaining a toll-free number and interactive voice response

system and a website dedicated to the Settlement and to assist potential Class

members who have questions about the Settlement or the submission of a Claim

Form.  (ECF No. 102, Ex. 1 ¶¶ 10, 11.)

     In accordance with the deadlines set forth in the Court's Preliminary

Approval Order, the deadline for Class members to submit objections to the

Settlement, Plan of Allocation, and/or the fee and expense application or to request

exclusion from the Class was March 23, 2016.  The Court received notice from one

individual seeking to be excluded from the Class: Stephen Baumann.  (ECF No.

106.)  As of April 13, 2016, Lead Counsel had received 86 requests for exclusion.[3]

(ECF No. 118 at Pg ID 4126.)  Only a handful of "objections" were filed: (1) by

Stephen Schoeman (ECF No. 96); (2) by Gregory Hollaus (ECF No. 99)[4]; (3) by

Jack Orava (ECF No. 103); (4) by Animesh Khemka (ECF No. 104); (5) by David

Wagner as Trustee of the Charles Francis Kayser Revocable Trust and Charles

---

[3] According to Lead Counsel, of the 85 requests for exclusion, 35 were submitted by investors who said they were not Class members or did not provide sufficient information to make that determination and 9 were from investors who sold all of the GM shares they purchased before the first corrective disclosure.
[4] Mr. Hollaus' submission is difficult to comprehend.  He appears to be referring to a Powerball ticket purchased at a 7-11.  (ECF No. 99.)

Francis Kayser (ECF No. 107); and (6) by Donald C. Marro (ECF No. 105.)[5]  Lead

Counsel also received objections from Mark McCrate, although those objections

were never filed with the Court.

## B.  Terms of the Settlement

The following summarizes the principal terms of the Settlement:[6]

1.  Class Certification.     As indicated above, Defendants stipulate and agree to

certification of the action as a class action pursuant to Federal Rules of Civil

Procedure 23(a) and (b)(3); certification of NYSTRS as Lead Plaintiff, and

appointment of Lead Counsel as Class Counsel.

2.  Settlement Fund.  In exchange for dismissal of the action with prejudice and the

release of all "Released Plaintiffs' Claims",[7] GM agrees to pay $300 million

---

[5] Mr. Marro also sent the Court a letter, dated March 15, 2016, in which he
complains about the tone used by Lead Counsel Salvatore J. Graziano during a
telephone conversation.  In addition, he filed a motion for leave to file supplement
objections or to join Schoeman's and Khemka's objections (ECF No. 110) and to
appear at the settlement hearing by telephone (ECF No. 112).  The Court granted
both motions on April 13, 2016.  (ECF Nos. 115, 116.)  Mr. Marro then filed
supplemental objections on April 15 and 19, 2016.  (ECF Nos. 120, 123.)

[6] Capitalized terms are defined in the Settlement.

[7] The Settlement defines "Released Plaintiffs' Claims" to mean:

> [A]ll claims and causes of action of every nature and
> description, whether known claims or Unknown Claims,
> whether arising under federal, state, common or foreign law,
> that Lead Plaintiff or any other member of the Settlement Class
> (i) asserted in the Complaint, or (ii) could have asserted in any
> forum that arise out of or are based upon the allegations,
> transactions, facts, matters or occurrences, representations or

("Settlement Fund") into an escrow account for the benefit of the Settlement Class. The Settlement Fund will be used to pay: (a) Taxes, (b) any Notice and Administration Costs, (c) any Litigation Expenses awarded by the Court; and (d) any attorneys' fees awarded by the Court.  The balance remaining in the Settlement Fund ("Net Settlement Fund") will be distributed to Class members according to a proposed Plan of Allocation, or whatever plan the Court otherwise approves.

3.  Calculating Distributions to Class Members.  Class members must submit a proof of claim form by the deadline set forth in the Claims Administrator's notice. Failure to submit a claim form by the deadline forever bars Class members from receiving any distribution from the Net Settlement Fund, despite the Class members being bound by the terms of the Settlement.  The Claims Administrator shall determine first whether the claim is a valid claim, in whole or part, and second, the claimant's pro rata share of the Net Settlement Fund based upon the claimant's "Recognized Claim" compared to the total Recognized Claims of all authorized claimants as set forth in the Plan of Allocation attached to the

---

omissions involved, set forth, or referred to in the Complaint and that relate to the purchase or acquisition of GM common stock during the Settlement Class Period.

(ECF No. 94, Ex. 1 ¶ mm.)  This definition is included in the Notice sent to potential Class members.  (ECF No. 102, Ex. 1, Ex. 2 ¶ 26.)

Settlement Agreement, or such other plan of allocation as the Court approves.[8]
The Settlement is not contingent on the Court's approval of the Plan of Allocation.

The Net Settlement Fund will be distributed to authorized claimants on a pro rata basis based on the relative size of their Recognized Claims. A "Distribution Amount" will be calculated for each Authorized Claimant, which will be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. However, if any Authorized Claimant's Distribution Amount is less than $10.00, it will not be included in the calculation and no distribution will be made to such Authorized Claimant.

A "Recognized Loss Amount" will be calculated for each purchase or acquisition of GM common stock during the Settlement Class Period that is listed in the Class member's Proof of Claim Form and for which adequate documentation is provided as follows:

> For each share of GM common stock purchased or acquired during the period from November 17, 2010 through and including the close of trading on July 24, 2014, and
>
> (a) Sold prior to the close of trading on March 10, 2014, the Recognized Loss Amount is $0.00.

---

[8] If the Claims Administrator determines that a Class member's submission is insufficient, the Settlement Agreement sets forth a procedure the Claims Administrator must follow to alert the individual and to provide the individual with the opportunity to remedy any curable deficiencies.

(b) Sold during the period from March 11, 2014 through and including the close of trading on July 24, 2014, except for shares purchased on July 24, 2014, the Recognized Loss Amount shall be the lesser of: (i) the amount of artificial inflation per share as set forth in Table A [to the Notice] on the date of purchase minus the amount of artificial inflation per share as set forth in Table A on the date of the sale; or (ii) the purchase price minus the sale price. For shares purchased on July 24, 2014 and sold prior to the close of trading on July 24, 2014, the Recognized Loss Amount shall be the lesser of: (i) $0.44; or (ii) the purchase price minus the sale price.

(c) Held as of the close of trading on July 24, 2014, the Recognized Loss Amount shall be the lesser of: (i) the amount of artificial inflation per share as set forth in Table A on the date of purchase; or (ii) the purchase price minus $35.07 (the closing price of GM shares on July 25, 2014, the day after the last day of the Class Period, at which point the inflation in the price of GM common stock due to the alleged fraud is assumed to have been completely dissipated).

(ECF No. 94, Ex. 2 ¶ 46.)

4.  Attorneys' Fees & Expenses.  The parties agree that Lead Counsel will apply to the Court for a collective award of attorneys' fees and litigation expenses, which may include a request for reimbursement of NYSTRS' costs and expenses, to be paid from (and out of) the Settlement Fund.  (*Id*. ¶ 15.)

By separate motion, Lead Counsel is seeking an award of attorneys' fees in the amount of 7% of the Settlement Fund, or $21 million, plus interest.  (ECF No. 101).  Lead Counsel also seeks reimbursement of $775,746.12 in litigation expenses incurred by Lead Counsel in prosecuting and resolving the action, and reimbursement of $2,903.71 in costs and expenses incurred by NYSTRS.  (*Id*.)

14

The Class was notified of these details in the Class Notice. (*See* ECF No. 94, Ex. 1 ¶ 57.)

## II. Final Certification of the Settlement Class

As set forth earlier, the Court conditionally certified the Settlement Class in its Order Preliminarily Approving Settlement. (ECF No. 95 ¶¶ 1-3.) The Court also approved NYSTRS as Lead Plaintiff. (*Id.* ¶ 3.) NYSTRS now asks the Court to unconditionally certify the Class for settlement purposes only under Federal Rule of Civil Procedure 23.

Under Rule 23, the Court must engage in a two-step analysis to determine whether to certify this as a class action for settlement purposes. First, the Court must determine whether Plaintiffs satisfy the prerequisites for maintaining a class action under Rule 23(a). Next, the Court must determine whether the requirements of one of the subsections of Federal Rule of Civil Procedure 23(b) are satisfied. *See* Fed. R. Civ. P. 23. NYSTRS seeks certification pursuant to Rule 23(b)(3).

Rule 23(a) allows for class certification if the following requirements are satisfied:

(a) the class members are so numerous that joinder of all members is impracticable;

(b) the action addresses questions of law or fact common to the class;

(c) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and

(d) the class representative parties will fairly and adequately
protect the interests of the class.

Fed. R. Civ. P. 23(a).  This Court determined in its November 20, 2015

Preliminary Approval Order that these prerequisites are satisfied.  (ECF No. 95

¶¶ 1-3.)  Nothing has changed to alter the Court's finding.

The Court also concluded in its November 20 decision that "there are

questions of law and fact common to the Settlement Class which predominate over

any individual questions" and that "a class action is superior to other available

methods for the fair and efficient adjudication of the action."  (*Id.*)  These findings

satisfy the requirements of Rule 23(b)(3).  Fed. R. Civ. P. 23(b)(3).  Nothing has

changed to alter the Court's finding with respect to these requirements either.

As such, the Court is unconditionally approving the certification of the Class

for settlement purposes.

### III.  Motion for Final Approval of Settlement & Plan of Allocation

#### A.  Legal Standard

Rule 23(e) of the Federal Rules of Civil Procedure sets forth the procedures

for the settlement of class actions.  Pursuant to the rule, the Court's role is to

determine whether the proposed settlement is "fair, reasonable, and adequate."

Fed. R. Civ. P. 23(e)(2).  In making this determination, the Court must consider

whether the interests of the class as a whole are better served if the litigation is

16

settled rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508,

522 (E.D. Mich. 2003). As one judge in this District has summarized:

> "In assessing the settlement, the Court must determine 'whether
> it falls within the range of reasonableness, not whether it is the
> most favorable possible result in the litigation." ' *In re
> Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319
> (N.D. Ga. 1993) (quoting *Fisher Bros. v. Cambridge-Lee
> Indus.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985)). An appropriate
> range of reasonableness "recognizes the uncertainties of law
> and fact in any particular case and the concomitant risks and
> costs necessarily inherent in taking any litigation to
> completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174,
> 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689,
> 693 (2d Cir. 1972)). Under this standard, "[a] just result is often
> no more than an arbitrary point between competing notions of
> reasonableness." *In re Corrugated Container Antitrust Litig.
> (II)*, 659 F.2d 1322, 1325 (5th Cir. 1981).

*Intl. Union v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *21 (E.D.

Mich. July 13, 2006), aff'd sub nom. *UAW v. Gen. Motors Corp.*, 497 F.3d 615

(6th Cir. 2007).

The standards applicable to approval of a settlement also govern the Court's

review of a plan of allocation of a settlement fund in a class action. *In re Ikon

Office Solutions Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000); *see also In re

Cardizem*, 218 F.R.D. at 531. The distribution plan must be fair, reasonable, and

adequate. *Id*.

Courts in the Sixth Circuit find the following factors relevant in considering

whether a class action settlement is fair, adequate, and reasonable:

17

"(1) the risk of fraud or collusion; (2) the complexity, expense
and likely duration of the litigation; (3) the amount of discovery
engaged in by the parties; (4) the likelihood of success on the
merits; (5) the opinions of class counsel and class
representatives; (6) the reaction of absent class members; and
(7) the public interest."

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) (quoting *UAW v.*
*Gen. Motors Corp.*, 497 F.3d at 631).  "The district court enjoys wide discretion in
assessing the weight and applicability of these factors."  *Granada Invs., Inc. v.*
*DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992); *see also Ford Motor Co.*,
2006 WL 891151, at *14 ("The court may choose to consider only those factors
that are relevant to the settlement at hand and may weigh particular factors
according to the demands of the case.").

In accordance with Rule 23, notice to a class certified under Rule 23(b)(3)
must be "the best notice that is practicable under the circumstances, including
individual notice to all members who can be identified through reasonable effort."
Fed. R. Civ. P. 23(c)(2)(B).  The notice must inform class members of the
following:

(i) the nature of the action; (ii) the definition of the class
certified; (iii) the class claims, issues, or defenses; (iv) that a
class member may enter an appearance through an attorney if
the member so desires; (v) that the court will exclude from the
class any member who requests exclusion; (vi) the time and
manner for requesting exclusion; and (vii) the binding effect of
a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23

18

## B.  Application

### 1.  Fraud or Collusion

"[C]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."  *Sheick v. Auto. Component Carrier LLC*, No. 09-14429, 2010 WL 4136958, at *19 (E.D. Mich. Oct. 18, 2010) (citing *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). Here, the Settlement is the product of arms' length negotiations between the parties.  During the process of preparing for a formal mediation of the claims, the parties engaged in intensive, direct discussions leading to NYSTRS making a demand directly to GM's Board of Directors.

### 2.  Complexity, Expense, and Likely Duration of the Litigation

The issues asserted in this PSLRA class action raise many complex issues, as evidenced by the 543-page Amended Complaint and briefing on Defendants' motions to dismiss.  Litigating this action would have required substantial additional time and expense.  Extensive additional fact discovery would have been required, including requests for production of documents, interrogatories, and depositions.  Substantial expert discovery also would have been needed with respect to such issues as automotive safety, accounting, and loss causation and damages.  Moreover, the parties would have had to litigate the issue of class certification and likely would have prepared and filed motions for summary

19

judgment and pre-trial evidentiary motions.  An appeal by the losing party would be likely regardless of the outcome of any dispositive motions or verdict if the case proceeded to trial-- a trial which likely would have been protracted.

Although not raised by NYSTRS, the Court takes notice that there are a plethora of lawsuits against GM and its officers and directors arising from the ignition-switch defect.  As a result, there is some chance that the pool of resources available for GM to resolve this particular lawsuit may have been depleted the longer the case remains pending.

As the Settlement provides an immediate, significant, and certain recovery for Class members, this factor favors the Court's approval of the Settlement.

### 3.  Discovery

The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement.  *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001). "[C]ourts do not require formal discovery so long as the parties have adequate information in order to evaluate the relative positions."  *Scheick*, 2010 WL 4136958, at *19 n.3 (quoting *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) ("Formal discovery [is not] a necessary ticket to the bargaining table.")).

The declaration of Salvatore Graziano, a partner for Lead Counsel, submitted in support of NYSTRS' motion, sets forth the extensive information NYSTRS and Lead Counsel obtained during discovery which enabled them to evaluate the strengths and weaknesses of the claims alleged in the Amended Complaint. (*See* ECF No. 102.) This includes:

•Conducting a thorough investigation, which included an in-depth review and analysis of: (i) documents filed publicly by GM with the SEC; (ii) GM press releases and other public statements; (iii) transcripts of GM investor conference calls; (iv) research reports concerning GM by financial analysts; (v) publicly available information from other legal actions arising out of the issues related to this Action; (vi) prior automotive safety litigation concerning car safety with GM and other automobile manufacturers and the NHTSA; (vii) interviews and meetings with former employees of GM and other knowledgeable persons; and (viii) Anton R. Valukas' May 29, 2014 Report to GM's Board of Directors regarding the ignition switch recalls (*Id.* ¶¶ 23, 27-32);

• Drafting the detailed Amended Complaint based on this extensive factual investigation and Lead Counsel's legal research into the applicable claims, (*Id.* ¶¶ 24-26);

• Preparing extensive briefing in response to Defendants' motions to dismiss (*Id.* ¶¶ 34-36);

•Obtaining and reviewing millions of pages of documents that GM had produced in the MDL Litigation (*Id.* ¶¶ 54-56);

•Consulting with experts and consultants in the fields of automotive safety, accounting, loss causation, and damages (*Id.* ¶¶ 4, 59);

•Drafting a mediation brief with a detailed analysis of the strengths, risks, and potential issues in the litigation in

21

preparation for a proposed mediation in October 2015 (*Id.*
¶ 60); and

•Engaging in intensive settlement negotiations with
Defendants' counsel, which included discussions of the range
of possible damages and potential terms of the settlement (*Id.*
¶ 61).

Thus, by the time the Settlement was reached, NYSTRS had sufficient information

to evaluate the strengths and weaknesses of the case and the merits of the

Settlement.  As a result, this factor supports approval of the Settlement.

### 4.  Likelihood of Success on the Merits

When considering this factor, the Court must balance Lead Plaintiff's

likelihood of success on the merits against the relief offered in the settlement.

*Gen. Motors Corp.*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S.

79, 88 n.14 (1981) ("[W]e cannot 'judge the fairness of a proposed compromise'

without 'weighing the plaintiff's likelihood of success on the merits against the

amount and form of the relief offered in the settlement.' ")).  "The determination of

a reasonable settlement 'is not susceptible to a mathematical equation yielding a

particularized sum,' but turns on whether the settlement falls within a range of

reasonableness."  *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 174

(E.D.N.Y. 2012); *see also Ohio Pub. Interest Campaign v. Fisher Foods, Inc.*, 546

F. Supp. 1, 6 (N.D. Ohio 1982) (courts consider "the range of reasonableness of the

settlement fund in light of the best possible recovery.").

Here, any prediction of success is far from reliable. As established in NYSTRS' motion, it faced several hurdles in order to prevail in this action, specifically in its ability to prove the falsity of Defendants' statements, scienter, and loss causation. (ECF No. 100 at Pg ID 3499-3504.) Moreover, recent trends in securities class action litigation suggest a high probability that Defendants' motion to dismiss would have been granted, resulting in the dismissal of the lawsuit. *See* Nat'l Econ. Research Assoc., Inc., *Recent Trends in Sec. Class Action Litig.: 2015 Full-Year Review* 19 (Jan 26, 2016) (finding that courts granted 54% of the motions to dismiss filed in securities class actions in 2015). Balanced against this is the favorable recovery the Settlement achieves.

NYSTRS' damages expert estimated the maximum approximate total damages that could be established in this lawsuit (assuming NYSTRS successfully established the elements of its claims), as ranging from $2.9 billion to $1.2 billion, depending on what assumptions are used with respect to loss causation. (ECF No. 102 ¶ 87.) At trial, this recovery may have been reduced even further as Defendants likely would have presented experts with contrary damages analysis and arguments to challenge the calculations made by NYSTRS' expert. However, even assuming the maximum possible damages were proven at trial, the $300 million Settlement represents approximately 11% to 25% of that amount. This is a very favorable recovery compared to the approved settlements in other securities

23

fraud actions. *See, e.g., In re Cendant*, 264 F.3d 201, 231 (3d Cir. 2001) (citing 1996 article describing recent trends in securities settlements as ranging from 9%-14% of claimed damages); *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-cv-525, 2007 WL 4225828, at *4 (D.N.J. Nov. 28, 2007) (finding settlement which "represents roughly 10.87% of the possible damages" to be "within the range of settlements approved in other securities cases"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (recovery of approximately 6.25% was "at the higher end of the range of reasonableness of recovery in class action[] securities litigation"); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005) (settlement representing 3.8% of plaintiffs' damage calculation was "within the range of reasonableness"); *In re Prudential Sec., Inc. L.P. Litig.*, MDL No. 1005, 1995 WL 798907 (E.D.N.Y. 1993) (settlement of between 6% and 10% of damages).

For these reasons, this factor favors approval of the Settlement.

### 5. Opinions of Class Counsel & Class Representatives

With respect to the fifth factor, courts recognize that the opinion of experienced, informed, and competent counsel in favor of settlement should be afforded substantial consideration. *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983); *IUECWA*, 238 F.R.D. at 597 ("The judgment of the parties'

24

counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.' ").  As evidenced by the firm's resume attached to Mr. Graziano's declaration (*see* ECF No. 102, Ex. 3-A), Lead Counsel has extensive experience handling private securities and complex class action litigation.  Further, as established earlier, Lead Counsel entered the settlement negotiations with Defendants after having undertaken substantial effort to secure a well-developed understanding of the strengths and weaknesses of the claims alleged in the Amended Complaint.  As such, Lead Counsel's endorsement of the Settlement is entitled to significant deference.

This factor therefore also favors approval of the Settlement.

### 6.  Reaction of Absent Class Members

"A certain number of . . . .objections are to be expected in a class action."  *In re Cardizem*, 218 F.R.D. at 527.  "Although the Court should consider objections to the settlement, the existence of objections does not mean that the settlement is unfair."  *In re Telectronics*, 137 F. Supp. 2d at 1018.  "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."  *In re Cardizem*, 218 F.R.D. at 527 (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 478-79 (S.D.N.Y. 1998)); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457, 458 (S.D.N.Y. 2004)

(six objections out of a class of approximately one million "constitutes a ringing endorsement of the settlement by class members"); *Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (finding that 79 objections in a class of nearly 11,000 "tends to support a finding that the settlement is fair").

The adequacy and reasonableness of the Settlement is evidenced here by the fact that following the mailing of over one million copies of the Class Notice (*see* ECF No. 102, Ex. 1 ¶ 8), there have been very few objections or inquiries regarding the settlement.  None of the objections was filed by an institutional investor even though such institutions owned 75% or more of GM's common stock during the Settlement Class Period and thus they have substantial financial interests in the action.  The individuals who have filed objections collectively acquired just 13,210 shares of GM stock during the Settlement Class Period, representing just 0.0008% of the approximately 1.6 billion shares of GM common stock outstanding during the Settlement Class Period.  Moreover, for the reasons that follow, the objections received fail to convince the Court that the Settlement should not be approved.

First, the Notice to potential Class members informed Class members wishing to object to the Settlement that they must provide documentation showing their purchases or acquisitions of GM common stock during the Settlement Class period.  (ECF No. 102, Ex. 1, Ex. A ¶ 65.)  Absent such evidence, the individual

26

fails to establish his or her standing to object to the Settlement. *See In re Nationwide Fin. Servs. Litig.*, No. 2:08-cv-00249, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 19, 2009) ("objectors failed to establish their membership in the Class or their standing to object."); *Feder v. Elec. Data Sys. Corp.*, 248 F. App'x 579, 581 (5th Cir. 2007) (objector lacked standing where he "produced no evidence substantiating his membership in the class."). The following individuals failed to provide documentation of their purchase or acquisition of GM common stock during the Class period: Stephen Schoeman, Ph.D. (ECF No. 96); Gregory Hollaus (ECF No. 99); Jack Orava (ECF No. 103); Animesh Khemka (ECF No. 104); and David Wagner as Trustee of the Charles Francis Kayser Revocable Trust (ECF No. 107). As such, the Court rejects their objections for lack of standing.

Donald Marro filed objections and supplemental objections (ECF Nos. 105, 111, 120) and appeared by telephone at the fairness hearing, at which time he stated further objections on the record.[9] Mr. Marro first complains about not receiving notice of this lawsuit until receipt of the Notice of Settlement. Rule 23 of the Federal Rules of Civil Procedure, however, sets forth when notice is mailed

---

[9] Approximately two weeks after the fairness hearing, Mr. Marro filed a "Supplemental Response" and a "Notice of Motion and Motion for Leave to File Supplemental Argument, for Judicial Notice and [S]tating Supplemental Argument to the Damages Measure Herein." (ECF Nos. 127, 128.) Mr. Marro has been provided ample opportunities to assert his objections to the Settlement, which the Court has considered and finds lacking in merit. The Court therefore is denying his request to file yet another "objection" to the Settlement.

to class members, i.e., only after a class is certified. The Court certified the Class in its November 20, 2015 Order Preliminarily Approving Settlement and the Class thereafter received notice in accordance with the timeline set forth in the order. Thus, Mr. Marro's first complaint lacks merit.

Mr. Marro next objects to the failure of NYSTRS and Lead Counsel to include GM warrants in the Class. This lawsuit was brought only on behalf of GM common stock shareholders, however, and thus the Class reflects the same. The Settlement does not impact the claim of GM warrant holders. In other words, claims by warrant holders are not released in exchange for the Settlement. (*See* ECF No. 94, Ex. 1 ¶ mm (defining "Released Plaintiffs' Claims" in the Settlement); *see also* ECF No. 102, Ex. 1, Ex. A ¶ 26.) As such, the Settlement does not preclude warrant holders from bringing their own lawsuit and claims seeking recovery against GM. Moreover, the decision whether to include GM warrant holders in this litigation fell within NYSTRS' discretion as lead plaintiff. *See In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.*, No. 09 MDL 2058, 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010) (citing *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004) (upholding the lead plaintiff's decision to bring claims only on behalf of stockholders, explaining that "in a securities class action, a lead plaintiff is empowered to control the management of the litigation as a whole, and it is within the lead plaintiff's authority to decide what claims to

28

assert on behalf of the class."); *see also In re Worldcom, Inc. Sec. Litig.*, No. 02 CIV 3288, 2004 WL 2591402, at *10 (S.D.N.Y. Nov. 12, 2004) (rejecting an objection to a partial settlement which "request[ed] that the definition of the Class be expanded to include settlers of default swaps."). Thus the failure of NYSTRS to include GM warrant holders in this lawsuit and, therefore their absence from the Class, is a meritless objection to the Settlement.

Mr. Marro raises additional issues in his supplemental objections (ECF No. 111, 120), all of which also lack merit. The Court finds it necessary to address only some of his additional claims. First, Mr. Marro's objections related to the liquidation of "Old GM" and the number of shares of new GM stock issued to holders of debt in "Old GM" should have been raised and resolved in the bankruptcy proceeding and cannot be relitigated here.

Mr. Marro also objects to the proposed Plan of Allocation and the selected Class Period because it excludes recovery based on sales of shares before March 10, 2014. NYSTRS establishes, however, that the Plan of Allocation was developed based on its expert's careful damages analysis. The Plan of Allocation excludes sales of shares before March 10, 2014 because that date is the date of the first alleged corrective disclosure that caused the price of GM stock to decline. Altering the Plan of Allocation as proposed by Mr. Marro would seek recoveries unavailable or inconsistent with the loss causation requirements of the Exchange

29

Act.  Investors who sold their shares before the first corrective disclosure that caused the price of GM common stock to decline are appropriately excluded from recovery because they would not be able to establish that the alleged fraud proximately caused their loss.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (providing that a securities plaintiff must prove that economic loss is proximately caused by the revelation that an alleged misrepresentation was false or misleading; where the "purchaser sells the shares … before the relevant truth begins to leak out, the misrepresentation will not have led to any loss").  While GM issued recalls related to the defective ignition switch before March 10, 2014, there was no statistically significant abnormal price declines in GM's common stock in reaction to those initial recall notices.

Lastly, Mr. Marro challenges the confidentiality of the Supplemental Agreement, which provides GM with the option to terminate the Settlement if the number of Settlement Class Members requesting exclusion from the Settlement Class exceeds a particular threshold.  The Notice to potential Class members informed them of the Supplemental Agreement, it simply did not reveal the precise threshold triggering GM's right to terminate the Settlement.  (*See* ECF No. 102, Ex. 1, Ex. A ¶ 61.)  The opt-out threshold "is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out."  *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248,

30

250 n.4 (11th Cir. 2009); *see also In re Skelaxin (Metaxalone) Antitrust Litig.*, No.
1:12-MD-2343, 2015 WL 1486709, at *2 (E.D. Tenn. Mar. 31, 2015) (an
agreement allowing the defendant to withdraw from the settlement if opt-outs
exceed a certain percentage should be maintained confidential because "[p]otential
opt-outs may exploit this type of provision by demanding undue compensation for
not scuttling the settlement."). In any event, this objection is moot as NYSTRS
informs the Court that the number of opt-outs did not reach the threshold.

In his objections, Mark McCrate first objects to failure of the Settlement to
account for the personal injuries caused by the ignition-switch defect. This
lawsuit, however, does not seek damages based on personal injury claims. Those
claims are being addressed in separate state and federal multi-district litigation.
Mr. McCrate next asserts that NYSTRS should not have agreed to settle this matter
if it felt that it has a strong case against Defendants. Nevertheless, regardless of
NYSTRS' and Lead Counsel's confidence in the strength of the claims asserted
against Defendants, they were obligated to weigh the likelihood of success against
the obstacles to success. As discussed earlier, it was reasonable for NYSTRS and
Lead Counsel to conclude that the immediate benefits offered by the Settlement
outweigh the risks of going forward and the potential loss at trial or reversal on
appeal. Mr. McCrate also objects to paragraph 71 of the Notice to potential Class
members, which applies to persons or entities who purchased or acquired GM

31

stock for the beneficial interest of persons other than themselves. (*See* ECF No. 102, Ex. 1, Ex. A ¶ 71.) As the paragraph does not apply to Mr. McCrate, he lacks to standing to object to it.

Mr. McCrate also challenges to the Plan of Allocation. First he objects to the Plan of Allocation's provision that a claimant's Recognized Loss Amount for a given purchase or acquisition of GM common stock should be calculated as "the lesser of" (i) the amount of artificial inflation on the date of purchase minus the amount of artificial inflation on the date of sale and (ii) the purchase price minus the sale price. The Court finds such a provision typical in plans of allocation and appropriate because it avoids the dilutive effect of distributing settlement proceeds to investors who suffered no financial loss or experienced gains. *See, e.g., Medoff v. CVS Caremark Corp.*, No. 09-cv-554, 2016 WL 632238, at \*7 (D.R.I. Feb. 17, 2016) (approving a similar plan); *In re the Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 258-59 (E.D. Va. 2009) (same).

Mr. McCrate next objects to the Plan of Allocation's minimum payment threshold of $10. Such thresholds, however, are standard in securities class actions and benefit the Settlement Class as a whole because they reduce the costs associated with printing and mailing checks for *de minimis* amounts, as well as costly follow-up to ensure those checks have been received and cashed. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328-29 (3d Cir. 2011) (affirming use of a

$10 minimum payment threshold over objection, reasoning that "*de minimis* thresholds for payable claims are beneficial to the class as a whole since they save the settlement fund from being depleted by administrative costs associated with claims unlikely to exceed those costs and courts have frequently approved such thresholds").

Lastly, with respect to the Plan of Allocation, Mr. McCrate objects to the provision for a *cy pres* distribution of any amount remaining in the Net Settlement after one or more re-distributions. Such provisions are common in class action settlements, however. Here, such a distribution only will occur once "it is determined that the re-distribution of funds remaining is not cost-effective" (*see* ECF No. 94, Ex. 2 at ¶ 84)-- that is, when the cost of conducting an additional *pro rata* distribution would exceed the remaining funds. *Cy pres* payments like those proposed for in this case can be approved when actual funds are "non-distributable," or " 'where the proof of individual claims would be burdensome or distribution of damages costly.' " *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) (quoting *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990)). "[A] *cy pres* remedy must be the 'next best distribution' of settlement funds" meaning only that it must "bear[] a substantial nexus to the interests of the class members"-- that is, it "must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the

33

silent class members . . .." *Id*. at 1036. The *cy pres* distribution proposed here comports with these standards. As such, Mr. McCrate's objections lack merit.

In summary, the small number of objections received from absent Class members and the lack of merit to the objections received from individuals demonstrating their standing to object weigh in favor of approving the Settlement.[10]

### 7. The Public Interest

The Supreme Court has recognized that private securities actions serve an important public interest. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission (SEC)."). "Likewise, there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at 1205) (additional internal quotation

---

[10] Even if the Court considered the objections submitted by individuals who failed to demonstrate standing, it still would conclude that this factor weighs in favor of approving the Settlement. These individuals represent only a small fraction of GM stockholders during the Settlement Class Period. Moreover, for the reasons stated by NYSTRS, their objections lack merit. (*See* ECF No. 118.)

marks and citation omitted).  Settlement of this private securities action serves the public interest by providing an efficient, yet substantial, recovery to a large class of shareholders.

This factor weighs strongly in favor of approval as well.

### 8.  Notice

The method, form, and content of the Class Notice satisfied Rule 23's notice requirement.  In accordance with the Court's Order Preliminarily Approving Settlement and Providing for Notice, Notice was sent to Class members via mail by GCG, published in *USA Today* and the *Wall Street Journal*, and transmitted over the *PR Newswire*.  The Notice informed Class members of the nature of the pending action, the general terms of the Settlement, the availability of complete and detailed information from the court files, and that any class member may appear and be heard at the fairness hearing.  (*See* ECF No. 102, Ex. 1, Ex. A.)  The Notice also informed Class members that Lead Counsel would be seeking an award of attorneys' fees not to exceed 7% of the Settlement Fund and costs and expenses not to exceed $1 million.  (*Id*.)  NYSTRS obtained the names and addresses of potential Class members from GM's shareholder records and from nominees who purchased GM stock for customers.  (ECF No. 102, Ex. 1 ¶¶ 3, 4.)

## C.  Conclusion

The above factors lead this Court to conclude that the Settlement and Plan of Allocation are fair, reasonable, and adequate and entitled to final approval.

## IV.  Motion for Attorney Fees & Expenses and NYSTRS' Expenses

Lead Counsel has separately moved for an award of attorneys' fees and reimbursement of litigation expenses incurred by counsel and NYSTRS.  As set forth earlier, Lead Counsel seeks attorneys' fees in the amount of 7% of the Settlement Fund, or $21 million, plus interest, as well as reimbursement of $775,746.12 in litigation expenses Lead Counsel incurred prosecuting and resolving this action.  Lead Counsel further seeks reimbursement of $2,903.71 in costs and expenses incurred by NYTRS related to its representation of the Settlement Class.  The Notice to Class members informed them that Lead Counsel would be applying for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed 7% of the Settlement Fund and for reimbursement of litigation expenses not to exceed $1 million.  (ECF No. 102, Ex. 1 ¶ 5.)

## A.  Legal Standard - Attorneys' Fees

"It is well established that 'a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole.' "  *In re Cardizem*, 218 F.R.D. at 531-32 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).  This is a common

fund case: "a case where named Plaintiffs have created a common fund by securing a recovery for themselves and the class they represent." *In re DPL Inc., Sec. Litig.*, 307 F. Supp. 2d 947, 949 (S.D. Ohio 2004).  The Sixth Circuit has held that in common fund cases, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).  The standard for attorneys' fee awards in common fund cases is that they be "reasonable under the circumstances." *Id*.; *see also In re Cardizem*, 218 F.R.D. at 531.  Reasonableness is evaluated by considering the following factors: ' "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.' " *Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).

The Sixth Circuit permits attorneys' fees in common fund cases to be calculated under either the percentage-of-the-fund or the lodestar method.[11]

---

[11] According to the lodestar method, an attorneys' fee award is calculated by multiplying the number of hours reasonably expended on the litigation by a

*Rawlings*, 9 F.3d at 516-17; *In re Cardizem*, 218 F.R.D. at 532. "The lodestar

method better accounts for the amount of work done, while the percentage of the

fund method more accurately reflects the results achieved." *In re DPL Inc., Sec.*

*Litig.*, 307 F. Supp. 2d 947, 950 (S.D. Ohio 2004). The Sixth Circuit has observed

a "trends towards adoption of a percentage of the fund method in [common fund]

cases." *Rawlings*, 9 F.3d at 515; *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780

(6th Cir. 2005); *see also* § 21D(a)(6) of the PSLRA, 15 U.S.C. § 78u-4(a)(6)

("total attorneys' fees and expenses awarded by the court to counsel for the

plaintiff class shall not exceed a *reasonable percentage* of the amount of any

damages and prejudgment interest actually paid to the class.") (emphasis added).

This is because the percentage method "is easy to calculate; it establishes

reasonable expectations on the part of [the] plaintiffs' attorneys as to their expected

recovery; and it encourages early settlement, which avoids protracted litigation."

*Rawlings*, 9 F. 3d at 516. The lodestar method is "too time-consuming of scarce

judicial resources," as it requires the district court to "pore over time, arrive at a

reasonable hourly rate, and consider numerous factors in deciding whether to

award a multiplier." *Id*. at 516-17. (citation omitted). "[I]t also provides

incentives for overbilling and the avoidance of early settlement." *Id*. at 517

(citation omitted). For all of these reasons, and because the PSLRA refers to an

---

reasonable hourly rate. *See West v. Hess Envt'l Servs., Inc.*, 111 F.3d 132 (6th
Cir.1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

award of attorneys' fees and expenses in relation to "a reasonable percentage of the amount of any damages . . . actually paid to the class," 15 U.S.C. § 78u-4(a)(6), the Court concludes that the percentage-of-the-fund approach is the better method for calculating Lead Counsel's fee award.

## B. Application - Attorneys' Fees

The 7% fee award requested by Lead Counsel appears to be more than reasonable. In fact, the amount sought here is considerably lower than the range of percentage fee awards generally accepted in this Circuit. *See In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008) (fees requested and approved were 18% and 20% of the common fund); *Cardizem*, 218 F.R.D. at 532 (recognizing that fees of 20-30% are generally awarded in the Sixth Circuit); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, *19 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions."). All of the factors recognized by the Sixth Circuit as relevant to determining the reasonableness of a fee request also support the requested award.

First, the recovery of a $300 million cash payment to the Settlement Fund provides an immediate value to the Class and represents a significant portion of the recoverable damages in the action as determined by NYSTRS' damages expert.

39

When balanced against the hurdles NYSTRS would have had to overcome to prevail in this complex securities fraud litigation, the value of the benefit to the Class appears substantial.

Regarding the value of the services on an hourly basis, a lodestar cross-check confirms that the requested fee award is reasonable. Lead Counsel attaches to its fee motion several affidavits from the numerous attorneys who have worked on the case. In total, counsel collectively expended 25,527.70 hours up to November 11, 2015. Applying the rates charged by counsel to the hours expended yields a "lodestar" figure of $10,873,042. While this is far below the $21 million sought by Lead Counsel, courts have found it appropriate to apply a multiplier to counsel's lodestar in complex class actions to reflect factors such as the contingency risk of the litigation and the quality of the work performed. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767-78 (S.D. Ohio 2007) ("Most courts agree that the typical lodestar multiplier" in a large class action "ranges from 1.3 to 4.5."); *In re Cardizem*, 218 F.R.D. at 533 (approving a lodestar multiplier of approximately 1.2% as "both reasonable and well within the range of multipliers awarded by courts in complex cases such as this."). The requested fee of $21 million represents a multiplier of 1.9%, which the Court finds to be well within an acceptable range.

40

Next, the Court considers whether counsel's services were undertaken on a contingent fee basis. NYSTRS did, in fact, prosecute this action entirely on a contingent basis, knowing that the litigation could last for four or five years, require the expenditure of thousands of attorney hours and millions of dollars in expenses, and could result in a loss at summary judgment, trial, or on appeal. Lead Counsel has incurred over $775,000 in out-of-pocket expenses litigating for the benefit of the Settlement Class and has received no compensation during the almost two years this action has been pending, despite the lack of any guarantee that it would ever be reimbursed for these costs or the payment of any fee.

"In evaluating the reasonableness of a fee request, the court also must consider society's stake in rewarding attorneys who produce a common benefit for class members in order to maintain an incentive to others." *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. at 503 (citing *Cardizem*, 218 F.R.D. at 534) ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this benefits society."); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d at 1043 ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources."). The federal securities laws are remedial in nature and adequate compensation is necessary to encourage attorneys to assume the risk of litigating private lawsuits to protect investors.

41

The Court further considers the complexity of the litigation.  As numerous courts have recognized, "[s]ecurities litigation class actions are inherently complex."  *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634 (W.D. Ky. 2006); *Fogarazzo v. Lehman Bros., Inc.*, No. 03-cv-5194, 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011).  The present case was no different.  It involved complicated accounting principles and legal and factual issues, as well as the production of over thirteen million pages of documents.  NYSTRS' counsel demonstrated a high level of competence, experience, and skill handling this complex litigation.  NYSTRS is represented by locally and nationally known leaders in the fields of securities class actions and complex litigation.  (*See* ECF No. 02, Exs. 3A-3, 3B-3.)

Taking into consideration the above factors, the Court is awarding attorneys' fees to Lead Counsel representing 7% of the Settlement Fund in this action.

## C.  Applicable Standard & Application - Litigation Expenses

"Under the common fund doctrine, 'class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses.' "  *New England Health Care Employees Pension Fund*, 234 F.R.D. at 634-35 (quoting *In re Cardizem*, 218 F.R.D. at 535).  When

42

deciding whether the requested expenses should be compensable, courts consider " 'whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases.' " *Id.*

Lead counsel seeks reimbursement of costs and expenses totaling $778,649.83. This amount is below the $1 million cap for costs and expenses, which the Notice informed Class members counsel would seek. (ECF No. (ECF No. 102, Ex. 1, Ex. A.) As set forth in Mr. Graziano's declaration, more than half of this amount was expended for document management costs related to the creation and maintenance of an electronic database, which enabled Lead Counsel to efficiently and effectively search and review the over 13 million pages of documents produced to NYSTRS in this litigation. (ECF No. 102 ¶ 125.) The bulk of the remaining expenses and costs relate to the retention of experts and consultants ($145,955.53), online legal and factual research ($86,307.10), and retention of specialized bankruptcy counsel to advise on matters arising from the bankruptcy and liquidation of GM's predecessor ($39,098.00). (*Id.* ¶¶ 126-28.) Lead counsel also seeks reimbursement for court fees, costs of out-of-town travel, copying costs, long distance telephone and facsimile charges, and postage and delivery. (*Id.* ¶ 129.) NYSTRS approves Lead Counsel's request. (ECF No. 102, Ex. 2 ¶ 14.)

The expenses and costs for which Lead Counsel seeks reimbursement are reasonable and "the type routinely billed by attorneys to paying clients in similar cases." Therefore, the Court is granting the requested award of costs and expenses.

### D.  Applicable Standard & Application - Lead Plaintiff's Expense

Lead Counsel also seeks approval for an award of $2,903.71 in costs incurred by NYSTRS related to its representation of the Class. The Notice to the Class informed members that NYSTRS would seek reimbursement for its expenses. (ECF No. 102, Ex. 1, Ex. A.)

The PSLRA expressly allows for an "award of the reasonable costs and expenses (including lost wages) directly relating to the representation of the class" to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). The expenses sought by NYSTRS relate to attendance at the hearings before this Court. (ECF No. 102, Ex. 2 ¶ 16.)  NYSTRS is entitled to an award reimbursing it for these expenses.

### V.  Conclusion

For the foregoing reasons, the Court finds the Settlement and Plan of Allocation to be fair, adequate, and reasonable to the Settlement Class and therefore is granting final approval of the Settlement and the Plan of Allocation. The Court also finds that Lead Counsel and NYSTRS are entitled to awards

44

reimbursing them for the attorneys' fees, costs, and expenses incurred in litigating this action on behalf of the Class and that the awards sought are reasonable.

Accordingly,

**IT IS ORDERED**, that Lead Plaintiff's Motion for Final Approval of Settlement and Approval of Plan Allocation (ECF No. 100) is **GRANTED**;

**IT IS FURTHER ORDERED**, that Lead Plaintiff's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (ECF No. 101) is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 19, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 19, 2016, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager